1  Thy B. Bui (SBN 256383)
2  tbui@constangy.com
   Aaron M. Rutschman (SBN 288273)
3  arutschman@constangy.com
   Weixuan Cai (SBN 320183)
4  wcai@constangy.com
5  **CONSTANGY, BROOKS, SMITH &**
   **PROPHETE, LLP**
6  2029 Century Park East, Suite 1100
7  Los Angeles, CA  90067
   Telephone:  310.909.7775
8
9  Attorneys for Defendants
10 PETSMART, LLC and
   JENNIFER HAECKEL
11

12             **UNITED STATES DISTRICT COURT**

13     **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

14

15 | KRISTIAN ANNETTE VANDIVER | Case No. 5:24-cv-000715
16 | *aka* "KRISTIAN ANNETE BUNCH," |
17 | an individual, | [*Removed from Riverside County*
   |  | *Superior Court Case No. CVRI2400778*]
18 |        Plaintiff, |
19 |    v. | **DEFENDANTS' NOTICE OF**
   |  | **REMOVAL UNDER 28 U.S.C.**
20 | PETSMART, LLC, a Delaware Limited | **§§ 1332, 1367, 1441 AND 1446**
21 | Liability Company; JENNIFER | **(DIVERSITY JURISDICTION)**
   | HAECKEL, an individual; and DOES 1 |
22 | through 20, inclusive, |
23 |        Defendants. | Complaint Filed:  February 8, 2024
   |  | Removal Date:    April 4, 2024
24 |  | Trial Date:       None Set
25

26

27

28

                          NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF KRISTIAN ANNETTE VANDIVER AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants PetSmart, LLC ("PetSmart") and Jennifer Haeckel (collectively "Defendants") hereby remove this action from the Superior Court of California, County of Riverside, to the United States District Court for the Central District of California. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this action is removable under 28 U.S.C. §§ 1441 and 1446. The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a).

## PROCEDURAL BACKGROUND

1. This case arises from Plaintiff Kristen Annette Vandiver's former employment with PetSmart. On February 8, 2024, Plaintiff filed this action in the Superior Court of the State of California, County of Riverside, Case No. CVRI2400778 (the "State Court Action"). In her Complaint, Plaintiff asserts a whopping thirty-one (31) claims for: (1) disparate treatment in violation of the Fair Employment and Housing Act ("FEHA"); (2) disability discrimination (FEHA); (3) failure to engage in the interactive process (FEHA); (4) failure to accommodate (FEHA); (5) retaliation (FEHA); (6) discrimination in violation of the California Family Rights Act ("CFRA"); (7) retaliation (CFRA); (8) wrongful termination in violation of public policy; (9) interference (CFRA); (10) whistleblower retaliation (Lab. Code §§ 98.6 and 1102.5); (11) retaliation (Lab. Code. § 6310); (12) negligent hiring, retention, or supervision; (13) harassment (FEHA); (14) failure to prevent discrimination, harassment, and retaliation (FEHA); (15) breach of contract; (16) negligent and intentional interference with prospective economic advantage; (17) violation of Labor Code § 2751; (18) discrimination

1

NOTICE OF REMOVAL

against victims of domestic violence (Lab. Code §§ 230 and 230.1); (19) retaliation against victims of domestic violence (Lab. Code § 230); (20) failure to provide a reasonable accommodation (Lab. Code § 230); (21) failure to engage in the interactive process (Lab. Code § 230); (22) retaliation against victims of domestic violence (Lab. Code § 230.1); (23) failure to provide meal periods (Lab. Code § 512); (24) failure to provide rest breaks (Lab. Code § 226.7); (25) failure to pay overtime wages (Lab. Code §§ 510, 558.1, 1194); (26) failure to pay minimum wages (Lab. Code §§ 558.1, 1194, 1194.2, 1197); (27) failure to provide accurate wage statement (Lab. Code §§ 226, 558.1); (28) waiting time penalties (Lab. Code §§ 201, 203, 558.1); (29) unlawful business practices (Bus. & Prof. Code § 17200); (30) intentional infliction of emotional distress; and (31) negligent infliction of emotional distress.

## TIMELINESS OF REMOVAL

2.      On or about February 15, 2024, Plaintiff served notice and acknowledgment of receipt forms ("NAR forms") for PetSmart and Ms. Haeckel on Defendants' counsel of record in addition to the following documents: (1) Summons; (2) Civil Case Cover Sheet; (3) Certificate of Counsel; (4) Alternative Dispute Resolution Information Package; (5) Notice of Case Management Conference; (6) Notice of Department Assignment; (7) Notice of Document Quality Assurance; and (8) Complaint with Exhibits "A" and "B" attached thereto.  True and correct copies of these documents are attached as **Exhibits 1 through 8**. True and correct copies of the NAR forms for Defendants that Plaintiff served on Defendants' counsel of record are attached as **Exhibits 9 and 10**. This was the first time any defendant was served with the State Court Action.

3.      No other process, pleadings, or papers have been filed in said action and no further proceedings have been had.

4.      Defendants "Does 1 through 20, inclusive" have not been identified, nor is there any record of their having been served with the Summons or the

2

Complaint in the State Court Action.

5. This removal is timely filed as required by 28 U.S.C. § 1446(b) having been accomplished within 30 days of the date service was effected by execution and return of the NAR forms by Defendants' counsel, which occurred on March 6, 2024, and within one year of the date the State Court Action was filed, which was February 8, 2024.

## DIVERSITY JURISDICTION

6. **Basis of Original Jurisdiction.** Defendants are entitled to remove the State Court Action on the ground that this Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1332 and it is an action which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b) because: (1) this action is a civil action between citizens of different states, as Plaintiff is a citizen of California and Defendant PetSmart, LLC is a citizen of Delaware and Arizona; (2) Defendant Jennifer Haeckel is a "sham" defendant and her citizenship should be disregarded for purposes of removal; and (3) this action involves an amount in controversy that exceeds the sum of $75,000, exclusive of interests, because Plaintiff alleges that she suffered compensatory damages, punitive damages, civil penalties, and attorneys' fees as further detailed below.

7. **Plaintiff's Citizenship.** For diversity purposes, an individual's citizenship is determined by the individual's domicile. K*antor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is her permanent home, where she resides with the intent to remain or to which she intends to return. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

8. An individual's residence is presumed to be their domicile unless it is disputed. *Tsoi Sim v. United States*, 116 F. 920, 923 (9th Cir. 1902) "The place where a person lives is taken to be his domicile, when acquired, is presumed to continue until it is shown to have been changed." *Id.* (quoting *Anderson v. Watts*, 138 U.S. 694, 706 (1891).

3

9.      Although *Tsoi* and *Anderson* were decided over 100 years ago, they remain good law. In *Tanner v. Ford Motor Company*, the Court found that the plaintiffs' domicile was established where plaintiffs stated that they are residents of Alameda county in their Complaint for damages. *See Tanner*, 424 F. Supp. 3d 666, 673 (N.D. Cal. 2019) (following *Anderson*.) The Court stated that evidence of a person's place of residence is prima facie proof of domicile. *Id.*

10.      PetSmart employed Plaintiff on and off from approximately October 2006 to May 11, 2022 and then again from August 19, 2022 to January 16, 2023. (Declaration of Will Devinney ["Devinney Decl."] ¶ 3). When she started with PetSmart in 2006, Plaintiff was a Grooming Associate at the PetSmart location in Yorba Linda, California location (Store No. 0098-04). (*Id.*) In August 2022, PetSmart rehired Plaintiff as a Grooming Associate at its Eastvale, California location (Store No. 134104). Plaintiff remained in this position until PetSmart terminated her employment on January 16, 2023. (*Id.*)

11.      In other words, Plaintiff's domicile has been in California for the entire duration of her employment with PetSmart, which is also evidenced by her wage statements and her Form W2s for 2022 – 2023.[1] True and correct copies of Plaintiff's payroll records during the period she worked at the Eastvale store are attached hereto as **Exhibit 11**. (*Id*. ¶ 4.) True and correct copies of Plaintiff's Form W2s during the period she worked at the Eastvale store are attached hereto as **Exhibit 12.** (*Id.*)  In addition, at the time Plaintiff filed her administrative charge with the California Civil Rights Department ("CRD") on February 8, 2024, she declared that she was a resident of California. A true and correct copy of Plaintiff's CRD charge is attached as **Exhibit 8**. Finally, Plaintiff was, at the time of filing her Complaint on February 8, 2024, a resident of the State of California. (*See* Compl.,

---

[1] To avoid superfluous volume, Defendants are attaching only Plaintiff's payroll records and Form W2s for the period of time that PetSmart employed her at its Eastvale, California location.

NOTICE OF REMOVAL

Ex. 8, ¶ 3.) As a result, for the entire duration of Plaintiff's employment with PetSmart, at the time of filing this action, and through to the present, Plaintiff has been domiciled in California and is therefore a citizen of California.

12. **Defendants' Citizenship.**

a. Citizenship of Defendant PetSmart, LLC. For purposes of diversity jurisdiction, corporations are "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) (the principal place of business is akin to the "nerve center" of the corporation, a place of "actual direction, control, and coordination" of the company). Similar to partnerships, LLC's for purposes of diversity jurisdiction are treated as "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). "Thus, when a corporation is a member of an LLC, the citizenship of the LLC will include the state(s) of which the corporation is a citizen." *Carper v. Tribune Media*, No. CV 15-04259 MMM (SSx), 2015 WL 5636922, at *3 (C.D. Cal. Sept. 28, 2015) (Morrow, J.) (citing *Johnson*, 437 F.3d at 899).

Defendant PetSmart, LLC is organized under the laws of Delaware with its principal place of business in Phoenix, Arizona. (Divinney Decl. ¶ 6). A true and correct copy of PetSmart, LLC's Entity Details maintained by the Delaware Secretary of State, which were accessed and printed from its website at corp.delaware.gov on March 27, 2024, is attached as **Exhibit 13**.

Although PetSmart's principal place of business is located in Arizona, the company is authorized to do business in California, amongst other states. The most recent version of PetSmart's Statement of Information filed with the California Secretary of State on December 7, 2022 indicates that PetSmart's principal place of business is in Phoenix, Arizona. A true and correct copy of PetSmart's Statement of

5

Information filed with the California Secretary of State on December 7, 2022, which was accessed and downloaded from the Secretary of State's website at www.sos.ca.gov on March 27, 2024, is attached as **Exhibit 14.**

The sole member of PetSmart, LLC is Argos Holdings, LLC, a Delaware limited liability company with its principle place of business in Phoenix, Arizona. (Divinney Decl. ¶ 6). a true and correct copy of an Entity Details for Argos Holdings, LLC maintained by the Delaware Secretary of State, which were accessed and printed from its website at corp.delaware.gov on March 27, 2024, is attached as **Exhibit 15.** The sole member of Argos Holdings LLC is Benji Acquireco, Inc., a Delaware corporation with its principal place of business in Phoenix, Arizona. (*Id.*) A true and correct copy of an Entity Details for Benji Acquireco, Inc. maintained by the Delaware Secretary of State, which were accessed and printed from its website at corp.delaware.gov on March 27, 2024, is attached as **Exhibit 16**. Thus, PetSmart is a citizen of Delaware and Arizona.

b.     Citizenship of Jennifer Haeckel. Diversity of citizenship also exists between the parties on the grounds that the citizenship of Defendant Jennifer Haeckel should be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1332, because she is a "sham" defendant, in that it is impossible for Plaintiff to establish liability against her. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067–68 (9th Cir. 2001) ("Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent"). Here, Plaintiff's joinder of Ms. Haeckel is fraudulent because she cannot state any of her claims against Ms. Haeckel as a matter of law.

1           c.     Plaintiff strains to allege seven (7) claims against Ms. Haeckel

2 in an obvious and unsupported effort to block removal of this case to federal court:

3 (1) harassment (FEHA); (2) failure to pay overtime wages (Lab. Code §§ 510,

4 558.1, and 1194); (3) failure to pay minimum wages (Lab. Code §§ 558.1, 1194,

5 1194.2, and 1197); (4) failure to provide accurate wage statements (Lab. Code §§

6 226, 558.1); (5) waiting time penalties (Lab. Code §§ 201, 203, 558.1);

7 (6) intentional infliction of emotional distress; and (7) negligent infliction of

8 emotional distress. Plaintiff cannot maintain *any* of these claims against Ms.

9 Haeckel as a matter of law:

10           i.    **Harassment (FEHA):** To support this claim against Ms.

11 Haeckel, Plaintiff alleges that Ms. Haeckel: (1) demanded that she resume work or

12 forfeit her job; (2) terminated her employment; (3) responded to a reference request

13 from another PetSmart location with "negative feedback" that resulted in an alleged

14 offer of re-employment being withdrawn; and (4) failed to engage in a good faith

15 interactive process. (*See* Compl., Ex. 8, ¶¶ 27-28, 34-35, 56, 83, 200, 208, 247-248,

16 306). These allegations are entirely insufficient for Plaintiff to maintain a

17 harassment claim against Ms. Haeckel.

18      Under FEHA, "harassment" in the workplace takes the form of

19 "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or

20 pervasive to alter the conditions of the victim's employment and create an abusive

21 working environment." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 263-

22 64 (2009). Moreover, harassing conduct takes place "outside the scope of necessary

23 job performance, conduct presumably engaged in for personal gratification, because

24 of meanness or bigotry, or for other personal motives." *Reno v. Baird*, 18 Cal.4th

25 640, 646 (1998). "Thus, harassment focuses on situations in which the social

26 environment of the workplace becomes intolerable because the harassment

27 (whether verbal, physical, or visual) communicates an offensive message to the

28 harassed employee." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 707 (2009).

1    However, as explained by the California Supreme Court in *Reno*, personnel-

2    related decisions involving discipline, termination, performance evaluations,

3    compensation, or job assignments cannot constitute unlawful harassment. *Reno*, 18

4    Cal.4th at 646. This is because personnel-related decisions are a normal part of an

5    employment relationship that cannot be avoided. All of Plaintiff's allegations here –

6    demanding Plaintiff return to work, termination of employment, negative feedback

7    regarding performance, and failure to engage in the interactive process—all

8    constitute personnel management actions that do not come within the meaning of

9    harassment.  *See Reno v. Baird*, 18 Cal. 4th 640, 644 (1998) (no individual liability

10   under the FEHA for personnel management actions); *Fisher v. San Pedro*

11   *Peninsula Hosp.*, 214 Cal. App. 3d 590, 613 (demurrer properly sustained where

12   allegations of harassing conduct were made "in a most conclusionary manner");

13   *Lawler v. Montblanc N. Am., LLC,* 704 F.3d 1235, 1244 (9th Cir. 2013) (personnel

14   management actions do not constitute harassment under FEHA).

15       Plaintiff's Complaint does not contain a single allegation of actionable

16   harassment against Ms. Haeckel, who is clearly a sham defendant. *See Hawkins v.*

17   *Transdev Services, Inc.*, No. 23-cv-01259-AMO, 2023 WL 8482872 (N.D. Cal.

18   Dec. 7, 2023) (remand denied and sham defendant burden met where claims against

19   manager amounted to personnel-related actions "because the allegations do not

20   describe any bias, animus, or offensive message communicated to [plaintiff]");

21   *Tipton v. Airport Terminal Servs., Inc*., No. 2:18-CV-09503-AB-JEM, 2019 WL

22   185687, at *7 (C.D. Cal. Jan. 14, 2019) (remand denied and sham defendant burden

23   met where claims against manager for harassment and IIED were not plausible as

24   management actions in employment context; motion to dismiss also granted);

25   *Wexler v. Jensen Pharm., Inc*., No. CV1503518ABAJWX, 2015 WL 6159101, at

26   *5 (C.D. Cal. Oct. 20, 2015) (remand denied and sham defendant burden met where

27   only allegations against manager supporting harassment and IIED claims were

28   routine personnel actions); see also *Hardin v. Wal-Mart Stores, Inc.*, 2012 WL

691707 at *18 (E.D. Cal., Mar. 2, 2012) ("Personnel management actions commonly necessary to carry out the duties of business and personnel management, and thus outside the purview of harassment, include 'hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions' and decisions regarding meetings.")

ii.     **Intentional Infliction of Emotional Distress:** To succeed on an IIED claim, a plaintiff must allege: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused or recklessly disregarded the probability of causing emotional distress, (3) the plaintiff suffered severe emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of plaintiff's emotional distress. *See Cole v. Fair Oaks Fire Prot. Dist.* 43 Cal.3d 148, 155 n.7 (1987). Plaintiff's allegations in support of her claim for intentional infliction of emotional distress ("IIED") are deficient for three reasons.

First, because Plaintiff does not have a viable harassment claim against Ms. Haeckel, it follows that she does not have a viable claim for IIED against her. *Haberman v. Cengage Learning, Inc.*, 180 Cal. App. 4th 365, 389 (2009) (if harassment allegations fail to establish hostile work environment, they fail to establish outrageous conduct sufficient for IIED claim).

Second, to avoid preemption for an IIED claim based on harassment, the allegations must include something *more* than mere personnel decisions like "demotions, promotions, criticism of work practices, and frictions in negotiations." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987). They must also include allegations of discriminatory conduct that goes beyond that which would ordinarily be found in the workplace, which are not present in Plaintiff's Complaint.

Third, even if Plaintiff's allegations manage to avoid preemption, she must still plead a *prima facie* IIED claim to demonstrate that the claim against Ms. Haeckel is non-fanciful, which she has not done here. Plaintiff has failed to plead

the first element as to Ms. Haeckel, which requires allegations of conduct that is "beyond the bounds of human decency." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996). The only alleged acts by Ms. Haeckel—that she demanded Plaintiff return to work, terminated her employment, provided negative feedback regarding her performance, and did not engage in the interactive process—are classic personnel management activities that cannot form the basis for an IIED claim. *Buscemi v. McDonnell Douglas Corp.,* 736 F.2d 1348, 1352 (9th Cir. 1984) (finding under California law that firing an employee by itself does not constitute "outrageous" conduct, even if the firing was without cause). Not only is this quintessential personnel management activity, Plaintiff admits that Ms. Haeckel was her supervisor, and that her actions were done "within the course and scope of [her] agency or representative capacity." *Id.* (*See* Compl., Ex. 8, ¶ 8).

      Federal district courts throughout California have routinely relied on *Janken* to dismiss IIED claims that were based on nothing more than personnel management conduct. *See, e.g.*, *Brooks v. City of Fremont*, No. C 07-06458 JSW, 2008 WL 1994889, at *7-8 (N.D. Cal. May 5, 2008) (dismissing IIED claim against individual supervisor where alleged conduct included subjecting the plaintiff to more scrutiny and higher standards on the basis of his race); *Bradshaw v. Glatfelter Insurance Group*, No. 1:08-CV-01898OWWSMS, 2009 WL 1438265, at *3 (E.D. Cal. May 20, 2009) (dismissing IIED claim because the alleged wrongful conduct was "management-level decisions involving employee placement, workplace investigations, performance evaluations, and staffing"); *Casey v Sumitomo (SHI) Cryogenics of America, Inc.*, 2019 WL 3817952, at *2-3 (S.D. Cal. Aug. 15, 2019) (dismissing IIED claim with prejudice based on personnel management activities); *Yang v. ActioNet, Inc.*, No. CV 14-00792-AB (PKWx), 2015 WL 13376522, at *6-7 (C.D. Cal. Nov. 6, 2016) (dismissing IIED claim with prejudice based on personnel management activities); *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000) ("[c]onduct which exhibits mere rudeness

and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress.")

This has also included situations, as here, where the supervisor was fraudulently joined in an attempt to defeat diversity jurisdiction. In those cases, the court denied motions to remand and dismissed the fraudulently-joined supervisor. *See Goens v. Adams & Associates, Inc.*, No. 2:16-cv-00960-TLN-KJN, 2017 WL 3167809, *1, 5-7 (E.D. Cal. July 25, 2017) (denying plaintiff's motion to remand and finding that individual defendant was a sham defendant because IIED claim could not be stated for personnel management conduct); *see also Mohammed v. American Airlines, Inc.*, No. C 19-01946 WHA, 2019 WL 3577160, at *1, 3-5 (N.D. Cal. Aug. 6 2019) (same).

Even if motivated by discriminatory animus, Ms. Haeckel's alleged conduct still cannot be considered so outrageous as to justify an IIED claim. *See, e.g.*, *Lurie v. Konica Minolta Bus. Sols. U.S.A.*, No. 16–CV–00787 RGK (JCx), at *4 (C.D. Cal. Apr. 11, 2016) (sham defendant burden met with finding that "Plaintiff has no IIED claim against the remaining Individual Defendants because supervisors and managers may not be held personally liable for making personnel decisions, even if the conduct is deemed discriminatory."); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002) (citing *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 61, 79–80 (1996)) ("Terminating an employee for improper or discriminatory reasons, like many other adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress.") In other words, Plaintiff cannot maintain an IIED claim against Ms. Haeckel even if her alleged personnel management actions were tainted by a discriminatory motive.

iii.    **Negligent Infliction of Emotional Distress:** It is well-settled in California that personnel management activity also cannot support a tort claim for negligent infliction of emotional distress ("NIED") against individual

1  supervisors. *See Ramirez v. Salvation Army,* 2006 WL 1867722, \*8 (N.D. Cal., July

2  6, 2006). For the same reasons detailed above, Ms. Haeckel's alleged conduct is

3  insufficient to state a claim against her for NIED.

4  　　　Furthermore, there is no *independent* tort of negligent infliction of emotional

5  distress. Rather, negligent infliction claims are a species of negligence and require

6  proof of the same elements as any negligence claims. *Delfino v. Agilent*

7  *Technologies, Inc.*, 145 Cal. 4th 790, 818 (2006). It is well-settled that "[a]n

8  employer's supervisory conduct is inherently 'intentional'" and, therefore, will not

9  support a claim for negligent infliction of emotional distress. *Id., quoting Cole v.*

10 *Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 160 (1987); *see also Edwards v.*

11 *U.S. Fidelity and Guaranty Company,* 848 F.Supp. 1460, 1466 (9th Cir. 1996). Put

12 another way, an employee cannot avoid the stringent requirements of an intentional

13 infliction of emotional distress claim, including proof of outrageous conduct and

14 exceeds all bounds usually tolerated by a decent society, by simply contending that

15 the employer's supervisory acts directed at the employee were negligent.

16 　　　　　　iv.   **Wage and Hour Claims:** Under California law, an

17 "employer or other person acting on behalf of any employer, who violates, or

18 causes to be violated, any provision regulating minimum wages or hours and days

19 of work in any order of the Industrial Welfare Commission, or violates, or causes to

20 be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as

21 the employer for such violation." Cal. Lab. Code § 558.1(a). The law limits the

22 phrase "other person acting on behalf of an employer" to describing "a natural

23 person who is an owner, director, officer, or managing agent of the employer." Cal.

24 Lab. Code § 558.1(b). Thus, only an employer, owner, director, officer, or

25 managing agent may be held liable for violations of the wage orders or the

26 identified provisions of the California Labor Code. *See id.* Here, all of Plaintiff's

27 wage and hour claims raised against Ms. Haeckel cannot be maintained, because

28 Plaintiff fails to allege (and cannot allege) facts sufficient to hold Ms. Haeckel as an

owner, director, officer, or managing agent of PetSmart.

The term "managing agent," includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 566-67 (1999).[2] These are corporate policies that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 714 (2009). Accordingly, a "managing agent" is "more than a mere supervisory employee." *Id.* at 573. The California Supreme Court explained:

> "[S]upervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation can be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees."

Following *White*, courts decline to find employees are managing agents when the facts do not show the employee was vested with discretionary authority over the business. *See, e.g., Gonzalez v. Sheraton Operating Corp.*, 2020 WL 7042817, at *1-2 (C.D. Cal. Dec. 1, 2020) (finding conclusory allegations that the plaintiff's supervisor was a "an owner director, officer, or managing agent" to be insufficient to invoke liability under Section 558.1); *Nguyen v. Erricson, Inc.*, 2018 WL 2836076, at *2-3 (N.D. Cal. June 11, 2018) (reviewing the allegations on a motion to remand and finding that plaintiff could not state wage and hour claims against his supervisor as a "managing agent").

---

[2] *White* addressed the term "managing agent" within the meaning of Cal. Civil Code § 3294(b). *See White*, 21 Cal. 4th at 566. However, Section 558.1 indicates "the term 'managing agent' has the same meaning as in subdivision (b) of Section 3294 of the Civil Code." Cal. Lab. Code § 558.1. Thus, *White* and its progeny are instructive on the meaning of the term.

In *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1106-07 (E.D. Cal. 2014), the Eastern District analyzed whether authority that *far exceeded* what is attributed to Ms. Haeckel by Plaintiff was sufficient to create liability against a "managing agent" under California Civil Code section 3294(b). The plaintiff was hired by defendant, a nation-wide company, to perform line clearance tree trimming and vegetation control for various utility companies and government districts, and sought to hold his foreman personally liable as a "managing agent." *Id*. at 1098, 1106. The foreman managed thirty-four people and two locations in Fresno on a day-to-day basis. *Id*. at 1106. The *Taylor* court concluded that this evidence was insufficient to establish liability because the supervisor did not manage a "substantial portion" of defendant's business. *Id*. The *Taylor* court also found that the foreman did not have "broad or unlimited authority." *Id*. at 1107. The Court held that "because the evidence does not indicate that [the foreman] had substantial discretionary authority over significant aspects of [defendant's] business, or that [the supervisor's] decisions created corporate policy, [the supervisor] was not a 'managing agent.'" *Id*.

The Northern District addressed similar facts in *Nguyen*, in which the plaintiff asserted his supervisor was a "managing supervisor" and sought to hold him liable for violations of wage and hour laws under Section 558.1. *Id.*, 2018 WL 2836076, at *2-3. The plaintiff argued his supervisor "oversaw the location where Plaintiff worked and supervised the daily work of employees." *Id.* at *3. The plaintiff alleged that "he reported to [the supervisor], [the supervisor] gave Plaintiff his daily assignments, and [the supervisor] reviewed all hours submitted for compensation and all requests for reimbursement." *Id.* (internal quotation marks omitted). The court found the allegations were insufficient "to show that [the supervisor] had substantial discretionary authority over a significant aspect of [the] business or that [the supervisor] had 'broad and unlimited authority.'" *Id.* Further, the court observed there were no "allegations from which to infer that [the

supervisor's] decisions created corporate policy." *Id.* Accordingly, the court concluded "the allegations in the complaint fail to establish that [the supervisor] was a 'managing agent of the employer" as required by California Labor Code section 558.1(b)." *Id.* at *2 (emphasis omitted).

Here, Plaintiff alleges in conclusory fashion that Ms. Haeckel is a "managing agent of the entity Defendants,"[3] but the only facts she alleges to support her position are that Ms. Haeckel: (1) set Plaintiff's wages, hours, or working conditions; (2) hired or terminated employees; (3) controlled Plaintiff's work; (4) assigned or supervised Plaintiff's work; (5) determined Plaintiff's hours, schedule, and conditions of employment; and (6) supplied "the instrumentalities, tools, or place of work" for Plaintiff. (*See* Compl., Ex. 8, ¶¶ 5, 12). This is insufficient. In accordance with *Taylor* and *Nguyen*, these allegations fail to show that Ms. Haeckel had substantial discretionary authority over a significant aspect of PetSmart's business or that Ms. Haeckel had "broad and unlimited authority." Nor are there any facts alleged from which to infer that Ms. Haeckel's decisions created corporate policy. Therefore, Plaintiff's wage and hour claims cannot be maintained against Ms. Haeckel in her individual capacity. *Taylor*, 58 F.Supp.3d at 1104 (finding authority over two yards in Fresno was not sufficient where the company operated in many locations); *Nguyen*, 2018 WL 283076, at *3 (even where a managing supervisor reviewed employee hours submitted for compensation and requests for reimbursement, it was insufficient to show he was a managing agent); *Barajas v. Blue Diamond Growers, Inc.*, No. 1:20-cv-0679-JKT-SKO, 2023 WL 2333548 (E.D. Cal. March 1, 2023) (dismissing wage and hour claims against individual supervisor and finding no facts alleged to support conclusion that supervisor "made significant decisions affecting company policy," such as "making and enforcement of rest break and meal break policies, and overtime").

---

[3] There are no allegations in the Complaint that Ms. Haeckel is an owner, director, or officer of PetSmart.

1    Furthermore, to the extent Plaintiff relies upon Ms. Haeckel's alleged

2    discretionary authority to hire and fire employees, such discretion is clearly

3    insufficient to establish her status as a "managing agent." *See, e.g., Vermillion v.*

4    *Corr. Corp. of Am.*, 2008 WL 4755329, at *12 (E.D. Cal. Oct. 29, 2008)

5    ("supervisory status and power to hire and fire employees is insufficient to

6    transform [an individual] into a managing agent in the absence of meaningful facts

7    of [her] discretionary authority over ultimate corporate decisions"); *Haynes v.*

8    *Home Depot U.S.A., Inc.*, 2020 WL 6871049, at *4 (S.D. Cal. Nov. 23,

9    2020) ("exercising some discretion"—including hiring and firing—"does not

10   equate to managing agent status without additional proof that the employee's

11   discretion affected widespread corporate policy").

12   Because Plaintiff fails to allege facts sufficient to support that Ms. Haeckel

13   was an owner, director, officer, or "managing agent" of PetSmart, individual

14   liability under Section 558.1 for the alleged violations of California wage and hour

15   law may not be invoked. For this reason too, the citizenship of Ms. Haeckel should

16   be disregarded for purposes of determining diversity jurisdiction because she is a

17   "sham" defendant.

18   13.   **Citizenship of Unnamed "Doe" Defendants**. The defendants Plaintiff

19   designates as Does 1 through 20 in the Complaint are fictitious defendants and are

20   not parties to this action. Unnamed defendants, such as Doe defendants, are not

21   required to join in a removal petition. The Court may therefore disregard their

22   citizenship for purposes of determining diversity jurisdiction. 28 U.S.C. § 1441(a);

23   *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

24   14.   **Amount in Controversy**. Defendants allege that based on Plaintiff's

25   Complaint, it is facially apparent that the amount in controversy in this action

26   exceeds the jurisdictional sum or value of $75,000. (*See* Compl., Ex. 8, Prayer,

27   demanding "**10,000,000.00**" in total damages) (emphasis added). "The calculation

28   of the amount in controversy takes into account claims for 'general' damages,'

'special' damages, punitive damages if recoverable as a matter of law." *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005); *see e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (factual allegations in the Complaint, along with the types of damages plaintiff sought made it facially apparent that the amount in controversy exceeded the $75,000 jurisdictional amount).

a. <u>Compensatory Damages.</u> PetSmart employed Plaintiff for approximately sixteen (16) total years before it terminated her employment. (Devinney Decl. ¶ 3). She alleges that as a result of Defendants' conduct, she is entitled to past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity. (Compl., Ex. 8, ¶¶ 44, 69, 87, 103, 114, 213, 241, 244, 325.)

b. Plaintiff specifically prays for general, compensatory, special, exemplary and punitive damages, attorneys' fees, interest, all statutory penalties, emotional distress damages, and lost benefits "in an amount that exceeds **$1,000,000**" and "total damages in the amount of **$10,000,000.00**." (*Id.*, Prayer, ¶ 5) (emphasis added).

c. As a Grooming Associate at the time PetSmart terminated her employment on January 16, 2023, Plaintiff averaged about 12 hours per week at a rate of at least $18.00 per hour. (Devinney Decl. ¶ 4.) Although Plaintiff's weekly work hours fluctuated, her 2022 IRS Form W2 provides a reliable estimate of her average weekly pay – approximately $270. (*See Id.*)

d. There are approximately 65 weeks between the date of the termination of Plaintiff's employment on January 16, 2023, and the filing of this Removal. Thus, if Plaintiff were to recover back wages spanning from the date of her separation to the date of Removal, Plaintiff would be entitled to approximately $17,550 in back wages (approximately 65 weeks of pay). Assuming this case proceeds to trial in August of 2025 (approximately eighteen (18) months after the

Complaint was served and after the Removal), and assuming that Plaintiff remains without work up to and throughout the time of trial, she will claim entitlement to an additional eighteen (18) months of back wages, or an additional $21,060.

    e.      Additionally, in California, front pay awards frequently span a number of years. *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1987) (upholding an award of front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97 (1976) (awarding a front pay award spanning over a four-year period); *Drzewiecki v. H&R Block, Inc*., 24 Cal. App. 3d 695, 705 (1972) (where the front pay award totaled 10 years). Assuming that Plaintiff seeks a front pay award of at least two years, that would amount to $28,080, for a total of approximately **$66,690** in front pay and back pay damages.

    f.      Civil Penalties. Plaintiff also seeks a civil penalty in the amount of $4,000.00 pursuant to Labor Code § 226, which is included in calculating the amount in controversy. (*See* Compl., Exhibit 8, ¶ 369). *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (civil penalties are included in determining whether the amount in controversy required for diversity jurisdiction is met); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (amount in controversy includes every item of possible relief except interest and costs). Combined with Plaintiff's lost wages, this brings the total amount of potential damages to at least **$70,690**.

    g.      Emotional Distress Damages. Plaintiff also alleges that she "has suffered and continues to suffer…severe emotional distress, exacerbation of her depression, financial hardship, and loss of professional reputation and career opportunities." (*Id.*, ¶ 57). She further alleges she has suffered mental and physical pain and deterioration, embarrassment, distress, humiliation, anguish, pain and suffering, loss of sleep, loss of appetite, loss of self-esteem, loss of enjoyment, anxiety, depression, and shame. (*Id.*, ¶¶ 87, 103, 114, 149, 170, 185, 193, 202-203,

1 | 214, 218, 229, 241, 326, 385, 394, 402).

2 |       Emotional distress damages may be considered when calculating the amount

3 | in controversy even when not clearly pled in the Complaint. *Simmons v. PCR Tech.*,

4 | 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (noting that while a retaliation case

5 | brought by a former employee would likely not result in an award of $3.5 million

6 | dollars in emotional distress damages, the court noted that "emotional distress

7 | damages in a successful employment discrimination case may be substantial");

8 | *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[t]he

9 | vagueness of plaintiffs' pleadings with regard to emotional distress damages should

10 | not preclude this Court from noting that these damages are potentially substantial").

11 | While Plaintiff has not quantified her emotional distress damages, when considered

12 | with her claims for compensatory damages, even a nominal demand for $25,000 in

13 | emotional distress damages would push the total claimed damages in this case

14 | beyond the $75,000 threshold.

15 |       h.    <u>Punitive Damages.</u> Plaintiff also seeks to recover punitive

16 | damages. (*See* Compl., Exhibit 8, Prayer ¶ 1.) Although California law does not

17 | provide any specific monetary limit on the amount of punitive damages that may be

18 | awarded pursuant to section 3294 of the California Civil Code, the proper amount

19 | of punitive damages under California law is generally based on the reprehensibility

20 | of a defendant's misdeeds, the ratio between compensatory and punitive damages,

21 | and ratio between damages and the defendant's net worth. *See Boyle v. Lorimar*

22 | *Prods., Inc.*, 13 F. 3d 1357, 1360 (9th Cir. 1994). Punitive damages are included in

23 | calculating the amount in controversy. *See Davenport v. Mut. Ben. Health & Acc.*

24 | *Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Aucina v. Amoco Oil Co.*, 871 F.

25 | Supp. 332, 334 (S.D. Iowa 1994). In *Aucina*, the employer-defendant established

26 | that the amount in controversy exceeded the jurisdictional minimum where the

27 | former employee asserted claims for lost wages, lost benefits, mental anguish, and

28 | punitive damages. *Aucina*, 871 F. Supp. at 334. The court noted that "[b]ecause the

purpose of punitive damages is to capture a [D]efendant's attention and deter others from similar conduct," punitive damages alone could exceed the jurisdictional threshold amount of $75,000 on its own. *Id.*

     i. <u>Attorneys' Fees.</u> Plaintiff also seeks to recover attorneys' fees. (*See* Compl., Exhibit 8, Prayer ¶ 2.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998). "When assessing the amount in controversy, the court considers the amount of attorneys' fees to be accrued throughout the entirety of the litigation." *Cain v. Hartford Life and Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012), *citing Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). *See also Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015); *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014). "[T]he Court can use its discretion to determine, within its own experience, that an award of attorneys' fees alone will satisfy the amount in controversy requirement." *James Dickey, Inc. v. Alterra Am. Ins. Co.*, No. 2:15-cv-00963-ODW-DTB, 2015 WL 4537732, at *3 (C.D. Cal. July 27, 2015), citing *Cain v. Hartford Life & Acc. Ins. Co.,* 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012). As such, even a minimum award of attorneys' fees "would place the amount in controversy well in excess of $75,000." *Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *3, *5 (E.D. Cal. Oct. 19, 2009) (internal citations omitted). When calculating attorneys' fees for the amount in controversy, courts routinely recognize that attorneys representing a single plaintiff in an employment dispute may reasonably spend at least 100 billable hours on a case. *See, e.g.*, *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) ("attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case"); *Sasso*, 2015 WL

NOTICE OF REMOVAL

898468, at *6 (reasonable attorneys' fees in a single-plaintiff matter with only four causes of action "may reasonably be expected to equal at least" 100 hours); *Cagle v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-02134-MCE-KJN, 2014 WL 651923, at *11 (E.D. Cal. Feb. 19, 2014) (100 billable hours was "a reasonable and good faith estimate of the expected fees" in a single-plaintiff employment matter that included wage claims). Moreover, if Plaintiff's counsel prosecutes this matter through trial, they will spend at least 300 to 500 billable hours (a conservative estimate) litigating this case with eight individual claims, which includes both gender and disability discrimination claims. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 225 (9th Cir. 2013) (finding that an attorneys' fees award for 1,610.8 total billable hours was reasonable where counsel argued multiple single-plaintiff FEHA discrimination claims through trial).

        j.    In a matter that Plaintiff's counsel, Valiant Law, filed in 2018 and prosecuted through trial in 2022, Mr. Kamran Shahabi declared that his hourly rate was $750. A true and correct copy of the August 25, 2022 Declaration of Kamran M. Shahabi, downloaded from the Los Angeles County Superior Court website on April 3, 2024, is attached as **Exhibit 17**.

        k.    It is likely that this matter will be litigated for approximately two (2) years before a potential trial, especially given that Plaintiff alleges thirty-one (31) claimd. *See* Complaint, *Moore v. Fast Eviction Serv., et al.*, Case No. CIVDS1801696 (Jan. 17, 2018). Thus, based on Mr. Shahabi's estimated rate of $750 an hour in attorneys' fees, it is reasonable to expect that Plaintiff's counsel will seek at attorneys' fees ranging from $200,000 to $250,000 for prosecuting this matter through trial—an amount that would, on its own, meet or exceed the jurisdictional threshold. Of course, this assumption does not take into account whether Plaintiff's counsel will increase their hourly rates by the time this matter concludes through trial.

        l.    Based on the foregoing estimate of economic and noneconomic

damages, punitive damages, and attorneys' fees, the amount in controversy is well satisfied. *See Simmons*, 209 F. Supp. 2d at 1034 (holding that plaintiff's discrimination claim exceeded the federal jurisdictional minimum, even though the lost wages at the time of removal were just $26,500, because Plaintiff sought emotional distress damages, punitive damages, and attorney's fees under FEHA); *Kroske,* 432 F. 3d at 980 (affirming removal of bank employee lawsuit, even though employee earned less than $75,000 per year, because emotional distress damages in a FEHA claim could reasonably be assumed to add enough to her lost wages and front pay to exceed the jurisdictional amount); *see, e.g., White v. FCI USA, Inc.,* 319 F. 3d 672, 675-76 (5th Cir. 2003) (holding that plaintiff's wrongful termination claim exceeded $75,000 based on his "lengthy list" of compensatory damages including loss of pay, employment benefits, impaired earning capacity, emotional distress, and other remedies). Accordingly, the amount in controversy in this action exceeds the jurisdictional sum or value of $75,000.

## CONCLUSION

15.     Complete diversity of citizenship exists inasmuch as Plaintiff is a citizen of California, Defendant PetSmart, LLC is a citizen of Delaware and Arizona, and individual Defendant Jennifer Haeckel is "sham" defendant whose citizenship should be disregarded for purposes of determining diversity jurisdiction. Furthermore, the amount in controversy exceeds $75,000. Accordingly, this Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. §§1332, 1441, and 1446, and Defendants have properly removed the State Court Action to this Court.

WHEREFORE, Defendants pray that the State Court Action be removed from the Superior Court of California, County of Riverside, to this Court.

Dated: April 4, 2024          CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By:   /s/Aaron M. Rutschman
Aaron M. Rutschman
Attorneys for Defendants PETSMART, LLC and
JENNIFER HAECKEL