# EXHIBIT 8

EXHIBIT 8
Page 51

Electronically FILED by Superior Court of California, County of Riverside on 02/09/2024 02:04 PM
Case Number CVRI2400778 0000083500426 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

Kamran Shahabi (State Bar No. 276194)
ks@valiantlaw.com
Tikran Babayan (State Bar No. 345310)
tb@valiantlaw.com
**VALIANT LAW**
800 Ferrari Lane, Suite 100
Ontario, California 91764
Phone: 909 677 2270 ♦ Fax: 909 677 2290

Attorney for PLAINTIFF, KRISTIAN ANNETTE VANDIVER aka
          "KRISTIAN ANNETE BUNCH",

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| KRISTIAN ANNETTE VANDIVER *aka* "KRISTIAN ANNETE BUNCH", an individual<br><br>PLAINTIFF,<br><br>v.<br><br>PETSMART, LLC, a Delaware Limited Liability Company; JENNIFER HAECKEL, an individual; and DOES 1 through 20, inclusive,<br><br>DEFENDANTS. | Case No. **CVRI2400778**<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1. Disparate Treatment in Violation of FEHA;<br>2. Disability Discrimination in Violation of FEHA;<br>3. Failure to Engage in the Interactive Process in Violation of FEHA;<br>4. Failure to Provide Reasonable Accommodations in Violation of FEHA et seq.;<br>5. Retaliation in Violation of FEHA;<br>6. Discrimination in Violation of the California Family Rights Act;<br>7. Retaliation in Violation of the California Family Rights Act;<br>8. Wrongful Termination in Violation of Public Policy<br>9. Interference with, Restraint, and Denial of Medical Leave in Violation of the California Family Rights Act;<br>10. Whistleblower Retaliation in Violation of Labor Code §§ 98.6 and 1102.5;<br>11. Retaliation in Violation of Labor Code § 6310;<br>12. Negligent Hiring, Retention, or Supervision;<br>13. Work Environment Harassment in Violation of Gov't. Code §§ 12923, 12940(j);<br>14. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA; |

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 8
-1-
COMPLAINT



VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

15. Breach of Contract;
16. Negligent and Intentional Interference with Prospective Economic Advantage;
17. Violation of Labor Code § 2751;
18. Discrimination Against Victims of Domestic Violence – Labor Code § 230 and 230.1;
19. Retaliation Against Victims of Domestic Violence–Labor Code § 230;
20. Failure to Provide Reasonable Accommodations in Violation of Labor Code § 230;
21. Failure to Engage in a Good Faith Interactive Process in Violation of Labor Code § 230;
22. Retaliation Against Victims of Domestic Violence – Labor Code § 230.1;
23. Failure to Provide Meal Periods in Violation of Labor Code § 512;
24. Failure to Provide Rest Breaks in Violation of Labor Code § 226.7;
25. Failure to Pay Overtime Wages Pursuant to Labor Code §§ 510, 558.1 and 1194;
26. Failure to Pay Minimum Wages Pursuant to Labor Code §§ 558.1 1194, 1194.2, and § 1197;
27. Failure to Provide Accurate Wage Statements in Violation of Labor Code §§ 226 and 558.1;
28. Waiting Time Penalties Pursuant to Labor Code §§ 201, 203, and 558.1;
29. Unlawful, Unfair, and Fraudulent Business Practices – Bus. & Prof. Code §§ 17200, et seq;
30. Intentional Infliction of Emotional Distress; and
31. Negligent Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

EXHIBIT 2
-2-
COMPLAINT
Page 53

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

**COME NOW** Plaintiff, KRISTIAN ANNETTE VANDIVER *aka* "KRISTIAN ANNETE BUNCH", an individual, and alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This is an unlimited case, and the Court has jurisdiction over this action because the amount of controversy exceeds $25,000, exclusive of interest and costs.

2.      Jurisdiction and Venue are also proper in this Court because all the claims alleged herein arose in Riverside County and all the Defendants are doing or did business throughout Eastvale and/or their principal place of business is in Riverside County, in each case, at times relevant here in. See also California Code of Civil Procedure § 395, which provides that the venue is proper in this County because Defendants reside in this County and the harm to Plaintiff occurred in this County.

<u>**PARTIES**</u>

3.      Plaintiff KRISTIAN ANNETTE VANDIVER *aka* "KRISTIAN ANNETE BUNCH" (hereinafter "PLAINTIFF"), at all times relevant hereto, was and is a resident of the State of California and was employed by entities within Riverside County and was assigned to work throughout Southern California during the applicable limitations period.

4.      PLAINTIFF is informed and believes, and thereon alleges, that Defendant PETSMART, LLC (hereinafter "PETSMART"), is a Delaware Limited Liability Company doing substantial business in the State of California, with its relevant place of business located at 12483 Limonite Ave, Mira Loma, CA 91752.

5.      PLAINTIFF is informed and believes, and thereon alleges, that Defendant JENNIFER HAECKEL, (hereinafter, "JEN"), is an individual residing in the State of California. JEN is a managing agent of the entity Defendants, and in the capacity during all times alleged herein, acted immediately under the direction of and was a managing agent of PETSMART, as defined below.

6.      PLAINTIFF is informed and believes, and thereon alleges, that DOES 1 through 20, inclusive (hereinafter referred to as "DOES"), are or were individuals and/or are or were doing business at all times herein mentioned and material hereto in the State of California, and are/were the alter ego, agent, managing agent, principal, owner, partner, joint venture, representative, manager, and/or co-conspirator of each of the other defendants, and were at all times mentioned herein acting

EXHIBIT 3
-3-
COMPLAINT
Page 54

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1   within the course and scope of said agency and employment, and that all acts or omissions alleged

2   herein were duly committed with the ratification, knowledge, permission, encouragement,

3   authorization and consent of each Defendant designated herein.

4          7.     The true names and capacities, whether individual, corporate or associate, or

5   otherwise, designated herein as DOES, are unknown to PLAINTIFF at this time, who, therefore, sue

6   said DOES by such fictitious names and will ask leave of Court to amend this Complaint to show

7   their true names and capacities when ascertained.

8          8.     PLAINTIFF is informed and believes, and based thereon, alleges that at all times

9   material hereto, PETSMART, JEN, and DOES 1 through 20 (hereinafter collectively referred to as

10  "DEFENDANTS") and each of them, were duly authorized agents, or servants, or representatives, or

11  co-conspirators of the other, or the alter ego, or the principal, or the owner, or representatives, and

12  were acting at all times within the course and scope of their agency or representative capacity with

13  the knowledge and consent of the other.

14         9.     All the acts and conduct herein and below described of every corporate DEFENDANT

15  was duly authorized, ordered by management-level employees of said corporate employers. In

16  addition, thereto, said corporate employers participated in the aforementioned acts and conduct of

17  their said employees, agents and representatives, and each of them; and upon completion of the

18  aforesaid acts and conduct of said corporate employees, agents and representatives, the defendant

19  corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded,

20  acquiesced, authorized and otherwise approved of each and all of the said acts and conduct of the

21  aforementioned corporate employees, agents and representatives. Thus, whenever and wherever

22  reference is made in this Complaint to any act by a DEFENDANT or DEFENDANTS, such

23  allegations and references shall also be deemed to be the acts and failures of each DEFENDANT

24  acting individually, jointly and severally.

25        **EXHAUSTION OF ADMINISTRATIVE PROCEEDINGS**

26        10.    PLAINTIFF exhausted her administrative remedies by timely filing a complaint for

27  the issues require to be raised herein against DEFENDANTS with the California Civil Rights

28  Department ("CRD") and thereafter received a "Right to Sue" attached here to as **Exhibit "A"**.

EXHIBIT 9 4
COMPLAINT

**FACTUAL ALLEGATIONS**

11.    DEFENDANTS operate in the retail and pet service industry, with their relevant place of business located at 12483 Limonite Ave, Eastvale, CA 91752, which was at all relevant times PLAINTIFF's legal employer and primary place of employment.

12.    PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS PETSMART and JEN: (1) set PLAINTIFF's wages, hours, or working conditions; (2) hired or terminated employees similar to PLAINTIFF; (3) controlled PLAINTIFF's work; (4) set or negotiated PLAINTIFF's wages; (5) assigned or supervised PLAINTIFF's work; (6) determined PLAINTIFF's hours or conditions of employment; (7) set PLAINTIFF's work schedules; and/or (8) supplied the instrumentalities, tools, or place of work for PLAINTIFF.

13.    As such, there is no dispute of material fact that DEFENDANTS were PLAINTIFF's legal employers and managing agents of PLAINTIFF's legal employers at all times relevant herein.

14.    PLAINTIFF began her employment with PETSMART in or around 2006, as a Professional Pet Stylist with unwavering loyalty and exceptional dedication. During the relevant time period discussed herein, PLAINTIFF worked tirelessly under the direct supervision of JEN.

15.    PLAINTIFF's duties included but were not limited to grooming dogs, cleaning their teeth, and checking in clients. As such, for over sixteen (16) years, PLAINTIFF was an exemplary employee, fighting for DEFENDANTS' bottom-line with grit and determination. PLAINTIFF was often commended for being one of DEFENDANTS' "top stylists," for "always providing great customer service," for "always being available to groom an extra dog," and for being "a very important part of PETSMART's performance."

16.    PLAINTIFF, a paragon of professionalism and a cornerstone of DEFENDANTS' commercial success, performed her duties with unparalleled excellence. Her role extended beyond grooming; she was a beacon of outstanding customer service and a critical contributor to PETSMART's performance, consistently exceeding the call of duty.

17.    PLAINTIFF's adherence to the DEFENDANTS' high standards, policies, and procedures was unwavering, as reflected in stellar performance reviews and successive salary increments throughout her tenure, serving as a testament to her steadfast compliance and

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 5
-5-
COMPLAINT
Page 56

professionalism. PLAINTIFF's infectious enthusiasm and commitment were instrumental in fostering a loyal customer base, exemplifying her dedication to her chosen vocation and her invaluable role within DEFENDANTS' operation.

18.     Furthermore, PLAINTIFF's status as an invaluable asset to DEFENDANTS' business operations and organizational success is also evidenced by the fact that throughout the tenure of employment with DEFENDANTS, PLAINTIFF completed nearly one hundred (100) rigorous training sessions offered and implemented by DEFENDANTS. Aside from the numerous trainings PLAINTIFF successfully completed that were designed for her specific position as a Professional Pet Stylist, PLAINTIFF also participated in trainings that would ensure customer satisfaction and service, and to ensure the general welfare of DEFENDANTS' business and safety of their patrons.

19.     During her enduring employment, PLAINTIFF confided in DEFENDANTS about profoundly personal and distressing events in her life. She was embroiled in a tumultuous and acrimonious divorce, necessitated by the grim reality of domestic abuse that included frequent violent encounters.

20.     PLAINTIFF's life was marred by persistent torment, harassment, and stalking by her then-spouse, even within the supposed sanctuary of her workplace, a distressing reality of which DEFENDANTS were fully cognizant. PLAINTIFF had no choice divulging these details to DEFENDANTS because as a result of her status as a victim of domestic violence and abuse, PLAINTIFF would from time-to-time need to take a day off to attend court proceedings related to her divorce, such as dissolution and injunctive relief proceedings. Examples of such incidents include but are not limited to: (1) DEFENDANTS' compelling PLAINTIFF to go lodge a police report as a result of her then-husband pervasively stalking her while at work–which PLAINTIFF did; and (2) a late-2022 incident where PLAINTIFF sought a protective order against her then-husband, aiming to ensure the safety and welfare of her child and herself.

21.     As detailed herein, these events resulted in PLAINTIFF's subsequent need for accommodations.

22.     The anxiety became so intense that in mid-December 2022, PLAINTIFF requested time off work to deal with her deteriorating mental health, which included a stay and recovery at a

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

EXHIBIT 6 -6-
COMPLAINT
Page 57

1   rehabilitation facility known for supporting victims of domestic violence. In light of DEFENDANTS'

2   profound knowledge into the personal and sensitive details of PLAINTIFF's life, including her status

3   as a victim of domestic violence, PLAINTIFF felt comfortable disclosing to DEFENDANTS that her

4   time-off from work was going to be spent undergoing rehabilitation at a professional rehabilitation

5   facility, and that she would have limited channels of communication while undergoing said

6   treatments.

7       23.    On or about December 16, 2022, PLAINTIFF received confirmation from

8   DEFENDANTS that her leave was approved from on or about December 19, 2022, through on or

9   about January 18, 2023. Confronted with the impending financial hardship this would impose on her

10  and her child, PLAINTIFF also pursued benefits through California's State Disability Insurance

11  (SDI), providing DEFENDANTS with all necessary documentation to substantiate her absence and

12  claim for auxiliary support through SDI.

13      24.    PLAINTIFF, displaying remarkable fortitude, undertook a rigorous and emotionally

14  taxing recovery at a renowned rehabilitation center for survivors of domestic violence. Amidst this

15  intense healing journey, PLAINTIFF adhered to the center's strict protocols, including a challenging

16  isolation period with restricted access to communication devices, all designed to foster mental well-

17  being. Despite these constraints, PLAINTIFF made commendable efforts to maintain contact with

18  DEFENDANTS, providing updates through sporadic texts and calls as permitted.

19      25.    While PLAINTIFF's sanctioned medical leave was anticipated to conclude around

20  January 18, 2023, her health necessitated a modest prolongation for complete recuperation.

21  Consequently, on or about January 14, 2023, PLAINTIFF prudently requested an extension through

22  January 31, 2023, which DEFENDANTS promptly and explicitly approved via text message by her

23  supervisor, Katy Wallace ("KATY").

24      26.    In a subsequent phone conversation, PLAINTIFF transparently communicated her

25  ongoing participation in the rehabilitation program to KATY. In response, KATY empathetically

26  assured PLAINTIFF that her extended leave presented "no problem" and that DEFENDANTS were

27  prepared to accommodate any post-treatment scheduling needs essential for her recovery from

28  domestic abuse.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

EXHIBIT X
-7-
COMPLAINT
Page 58

27.     In a stark betrayal of trust and professional decency, less than two days after KATY's text message advising PLAINTIFF that the minor extension to her leave request presented "no problem," during a call with PLAINTIFF, JEN, the Store Manager, confronted PLAINTIFF with a callous and legally indefensible ultimatum: resume work immediately or forfeit her job. Despite DEFENDANTS' approved extension and PLAINTIFF's entitlement to accrued paid time off ("PTO") for leave extension, JEN threatened termination for job abandonment in defiance of PLAINTIFF's rights, using "business needs" as a guise for what PLAINTIFF firmly believes was retaliatory and discriminatory action linked to her status as a domestic abuse survivor and individual with disabilities.

28.     In a heartfelt plea, PLAINTIFF implored JEN to understand her circumstances, emphasizing that her treatment for trauma at the rehabilitation center for domestic violence survivors was nearing its conclusion, with a definitive end to her treatments anticipated by January 31, 2023. Despite this vulnerable disclosure, JEN's reaction was callously dismissive; responding with "consider yourself terminated" before abruptly hanging up on PLAINTIFF, leaving her in a state of shock and disbelief.

29.     In an attempt to seek clarity amidst this turmoil, PLAINTIFF engaged GARZA, another supervisor, Nicholas Garza (hereinafter "GARZA"), who revealed that DEFENDANTS now deemed PLAINTIFF a "liability" due to her personal life upheavals, exposing DEFENDANTS' neglectful and discriminatory stance that disregarded PLAINTIFF's lengthy and loyal service of sixteen (16) years.

30.     Despite DEFENDANTS' full awareness of the severe abuse that necessitated PLAINTIFF's intensive mental health treatment, and their previous assurances of support upon her treatment completion and readiness to return to work, DEFENDANTS executed a duplicitous plot to wrongfully terminate her under the fabricated pretense of job abandonment.

31.     As a result of their calculated and pretextual scheme, on or about January 16, 2023, brazenly contravening the legal and ethical obligations that govern employer-employee relationships, DEFENDANTS egregiously and unlawfully terminated PLAINTIFF's employment, flagrantly violating PLAINTIFF's employment rights, demonstrating a complete disregard for the principles of fairness, justice, and equitable treatment in the workplace.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 8
-8-
COMPLAINT
Page 59

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

32.     The wrongful termination delivered a severe blow to PLAINTIFF, exacerbating her depression and magnifying the overwhelming challenges she faced. DEFENDANTS, fully aware that PLAINTIFF's State Disability Insurance (SDI) benefits were set to cease upon the conclusion of her rehabilitation and her anticipated return to the workforce, DEFENDANTS callously stripped her of her financial lifeline, rendering her and her children without any means of support in a time of acute vulnerability.

33.     In a desperate effort to mitigate the harrowing consequences of DEFENDANTS' unjustifiable and illegal actions, PLAINTIFF reached out to a different PETSMART store where she previously worked during her sixteen (16) year tenure—PETSMART, Chino Hills (Store #1092), at 13001 Peyton Drive, Chino Hills, CA 91709—and inquired into whether Store #1092 would offer PLAINTIFF a position. Recognizing her stellar 16-year tenure and numerous commendations, the staff at PETSMART Store #1092 stated that they would "love to have her as part of the team" and that they absolutely had a position for PLAINTIFF if she wanted to work at Store #1092, pending a standard reference check with her prior store managed by JEN.

34.     In a shocking and unjust sequence of events, PLAINTIFF was blindsided by a call from PETSMART Store #1092, merely a day after prior communications, informing her that, influenced by discussions with management at PETSMART in Eastvale—JEN's place of employment—PETSMART Store #1092 was abruptly withdrawing the employment offer to PLAINTIFF.

35.     DEFENDANTS' Human Resources Department (hereinafter "HR") also played a significant role in the construction of PLAINTIFF's wrongful termination. Because of DEFENDANTS' unjustified termination of her employment and inability to retain employment at a different PETSMART store, PLAINTIFF contacted DEFENDANTS' Human Resources ("HR") department for further clarity on why she was being forced out of her employment. This inquiry was a direct result of being unceremoniously ousted for a modest request for a leave extension, a request that came after sixteen (16) years of steadfast service and DEFENDANTS' inexplicable refusal to allocate any of PLAINTIFF's accrued PTO towards this extension.

36.     Astonishingly, HR not only confirmed that PLAINTIFF was in fact terminated,

EXHIBIT 8
-9-
COMPLAINT
Page 60

PLAINTIFF also discovered that she was unjustly branded as "***non-rehirable***," barring her from future employment opportunities within PETSMART. Egregiously, this decision was made while PLAINTIFF was still receiving treatment at a rehabilitation facility for domestic violence survivors. When pressed for justification, DEFENDANTS' HR representative offered no substantial rationale, leaving PLAINTIFF in the dark with a baseless and unexplained termination.

37.    PLAINTIFF was left in a state of horror and disbelief, especially after assurances from DEFENDANTS that her request for a scheduling change, necessary for her recovery from domestic violence, was granted. DEFENDANTS' sudden and inexplicable reversal—from approving her leave extension to the seemingly pretextual termination of her long-standing employment—was executed without providing any valid reason or documentation to substantiate such a draconian decision.

38.    It is crucial to underscore that PLAINTIFF's wrongful termination was not a consequence of job abandonment or any misconduct on PLAINTIFF's part. The minor leave extension, which was initially approved only to be swiftly revoked, would not have burdened DEFENDANTS' operations in any conceivable manner. DEFENDANTS' conduct was nothing less than a thinly veiled attempt to expel a faithful employee whom they now perceived as a "liability."

39.    Furthermore, over the course of more than sixteen (16) years of unwavering service to PETSMART, PLAINTIFF endured a series of detrimental employment actions that were unrelated to the aforementioned incidents.

40.    During her tenure, PLAINTIFF sustained multiple injuries from dog bites. Each and every one of PLAINTIFF's disclosures of her on-the-job injuries was met with indifference by DEFENDANTS, dismissively attributing such injuries as an occupational hazard and neglecting their duty to ensure a safe working environment.

41.    Throughout the tenure of her employment with DEFENDANTS, PLAINTIFF was systematically compelled to forfeit her meal and rest breaks. Due to the high demand of customers requiring grooming services for their dogs, PLAINTIFF and other Professional Pet Stylists were consistently asked to work during their rest breaks and to clock out for lunch before their 5th hour of work but continue working in order to meet demands.

42.    Throughout the tenure of her employment with DEFENDANTS, PLAINTIFF was

EXHIBIT 8

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

entitled to a 50% commission for every dog she groomed. (See, **Exhibit "B"** attached herein). On average, PLAINTIFF groomed 7-10 dogs per day, yet DEFENDANTS failed to compensate PLAINTIFF for all of her earned commissions, reflecting DEFENDANTS' blatant disregard for PLAINTIFF's contractual and financial rights.

43.     As a result of DEFENDANTS' multiple forms of discrimination, harassment, retaliation, and numerous Labor Code violations, PLAINTIFF has suffered and will continue to suffer general and special damages, including severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses for psychological counseling and treatment, and past and future lost wages and benefits.

44.     As a result of the above, PLAINTIFF is entitled to past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity.

45.     PLAINTIFF claims general damages for emotional and mental distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

46.     Because the acts taken toward PLAINTIFF were carried out by officers, directors and/or managing agents acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of PLAINTIFF's rights and in order to injure and damage PLAINTIFF, PLAINTIFF requests that punitive damages be levied against DEFENDANTS and each of them, in sums in excess of the jurisdictional minimum of this Court.

47.     PLAINTIFF now commences this suit against DEFENDANTS, and each of them, and alleges the following:

## FIRST CAUSE OF ACTION

### Disparate Treatment in Violation of FEHA

### (As to PETSMART, and DOES 1 through 20)

48.     PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

49.     At all times herein mentioned, DEFENDANTS were employers within the meaning of the Fair Employment and Housing Act (FEHA) (Gov. Code § 12900 et seq.). DEFENDANTS, through its egregious actions and inactions as set forth herein, have violated PLAINTIFF's rights

1    protected under FEHA, particularly the prohibition of disparate treatment based on protected status.

2        50.    PLAINTIFF was, at all relevant times, an employee of DEFENDANTS.

3        51.    DEFENDANTS' actions, culminating in PLAINTIFF's wrongful termination on or

4    about January 16, 2023, constitute an adverse employment action. This termination was a flagrant

5    contravention of the assurances provided by DEFENDANTS and an egregious betrayal of the trust

6    and professional relationship built over a tenure of sixteen (16) years.

7        52.    PLAINTIFF's status as a victim of domestic violence and her associated mental health

8    struggles, which qualify as a disability under FEHA, were substantial motivating reasons for

9    DEFENDANTS' decision to terminate her employment–as supported by the stark contrast in

10   DEFENDANTS' treatment of PLAINTIFF after her disclosure of these personal circumstances and

11   the need for accommodations.

12       53.    PLAINTIFF was an employee of DEFENDANTS, and DEFENDANTS were

13   PLAINTIFF's legal employer. This employment relationship is established by PLAINTIFF's

14   continuous service from 2006 until her wrongful termination in January 2023.

15       54.    PLAINTIFF experienced adverse employment actions, including wrongful

16   termination and refusal of leave extension. These actions are exemplified by the explicit instruction

17   from JEN, to "consider yourself terminated," as well as the subsequent confirmation of this

18   termination by DEFENDANTS' Human Resources Department.

19       55.    PLAINTIFF's status as a domestic abuse survivor and individual with a disability,

20   requiring psychological treatment and special accommodations, was a substantial motivating reason

21   for DEFENDANTS' decision to terminate her employment. This is evidenced by DEFENDANTS'

22   initial approval of her leave for rehabilitation, followed by a sudden and unjustified revocation of this

23   approval and subsequent termination.

24       56.    The actions of DEFENDANTS, particularly the Store Manager, JEN, and Human

25   Resources Department, in dismissing PLAINTIFF's circumstances, terminating her employment

26   while she was receiving treatment, and subsequently declaring her "non-rehirable," are indicative of

27   a pattern of neglect and discrimination. This pattern directly contravenes the statutory protections and

28   guarantees afforded to PLAINTIFF under FEHA.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT -8-
-12-
COMPLAINT
Page 63

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

57.     As a direct result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer significant harm. This includes, but is not limited to, severe emotional distress, exacerbation of her depression, financial hardship, and loss of professional reputation and career opportunities.

58.     DEFENDANTS' conduct was a substantial factor in causing the harm to PLAINTIFF. This is demonstrated by the direct correlation between PLAINTIFF's request for a leave extension due to her status as a domestic violence survivor and the subsequent adverse actions taken against her, culminating in her wrongful termination.

59.     DEFENDANTS' actions, as detailed herein, represent a clear and unconscionable instance of disparate treatment in violation of FEHA. DEFENDANTS discriminated against PLAINTIFF because of her status as a victim of domestic violence and her mental health condition, which is a protected characteristic under FEHA. This is evident from the disparate treatment PLAINTIFF received compared to other employees who did not share circumstances similar to her.

60.     In subjecting PLAINTIFF to the aforementioned adverse employment actions and refusing to take steps to remedy the situation, DEFENDANTS acted with malice, fraud, and/or oppression under Civil Code § 3294.

61.     In light of DEFENDANTS' willfully, knowingly, and intentionally subjecting PLAINTIFF to disparate treatment, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, for damages according to proof at trial, for compensatory and punitive damages, prejudgment interest, costs of suit, attorneys' fees, and for such other and further relief as the court may deem just and proper.

## SECOND CAUSE OF ACTION

### Disability Discrimination in Violation of FEHA

### (As to PETSMART, and DOES 1 through 20)

62.     PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

63.     The actions and behavior of DEFENDANTS' willfully subjected PLAINTIFF to undue hardship, manifesting both explicitly and implicitly in their blatant disregard for her well-being, mental health, and legal rights, thereby revealing a distinct pattern of unlawful conduct. This

conduct directly contravenes the legal protections granted under the Americans with Disabilities Act (ADA) and the FEHA, which prohibit disability discrimination and mandate equal treatment.

64.    DEFENDANTS were PLAINTIFF's legal employers, controlling her work schedules, work conditions, remuneration, and other employment-related aspects. DEFENDANTS' substantial authority over PLAINTIFF's employment conditions unmistakably establishes an employer-employee relationship.

65.    DEFENDANTS were aware of PLAINTIFF's profound psychological distress, arising from her status as a victim of domestic violence, which necessitated her request for medical leave for treatment at a rehabilitation facility. This distress constituted a disability under FEHA, limiting major life activities including work.

66.    PLAINTIFF, despite her disability, was able to perform her essential job duties, evidenced by her distinguished service, numerous accolades, and unwavering commitment to DEFENDANTS' business success.

67.    DEFENDANTS engaged in unlawful employment actions against PLAINTIFF, culminating in her wrongful termination.

68.    PLAINTIFF's disability was a substantial motivating reason in DEFENDANTS' decision to terminate her employment. This is demonstrated by DEFENDANTS' disregard for her medical leave, the abrupt revocation of previously approved leave extension, and the subsequent termination of her employment under the pretext of job abandonment.

69.    PLAINTIFF suffered significant harm as a direct result of DEFENDANTS' actions, including emotional distress, loss of wages, and damage to her professional reputation.

70.    DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's harm, as evidenced by the termination of her long-standing employment relationship immediately following her disability-related leave.

71.    It is evident from the above that DEFENDANTS held ill will or animosity towards PLAINTIFF due to her disability. The callous and dismissive manner in which DEFENDANTS addressed PLAINTIFF's disability-related requests and subsequent termination evince ill-will and animosity. This ill-will manifested itself in a series of actions that led to PLAINTIFF's wrongful

EXHIBIT -14-
COMPLAINT
Page 65

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1  termination, all of which amply demonstrate that DEFENDANTS treated PLAINTIFF disparately

2  due to her disability and protected status.

3      72.    Therefore, PLAINTIFF's experience of disparate treatment based on her disability, the

4  neglect to provide reasonable accommodations, and DEFENDANTS' misconduct all contribute to

5  the establishment of a prima facie case of disability discrimination. Notably, PLAINTIFF's legal

6  protections under the ADA and FEHA were violated, and her right to be treated with dignity, respect,

7  and fairness was wholly with similar content.

8      73.    In light of the willful, knowing, and intentional discrimination related to

9  PLAINTIFF's disability, PLAINTIFF prays for judgment against DEFENDANTS, and each of them,

10  for damages according to proof at trial, for compensatory and punitive damages, prejudgment interest,

11  costs of suit, attorneys' fees, and for such other and further relief as the court may deem just and

12  proper.

13  **THIRD CAUSE OF ACTION**

14  **Failure to Engage in the Interactive Process in Violation of FEHA**

15  **(As to PETSMART, and DOES 1 through 20)**

16      74.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every

17  preceding and subsequent paragraph as though fully set forth herein.

18      75.    DEFENDANTS were PLAINTIFF's employer(s) at all times relevant herein; and

19  PLAINTIFF was an employee of DEFENDANTS' at all times relevant herein.

20      76.    Pursuant to Gov. Code § 12940(n), DEFENDANTS, and each of them, were required

21  to engage in a good faith interactive process with PLAINTIFF to determine the extent of

22  accommodations needed based upon her notice of disability and her requests for accommodations

23  pursuant to her doctor ordered medical leave and/or medical limitations.

24      77.    In violation of FEHA, *California Government Code* § 12940(n), DEFENDANTS

25  failed to engage in the interactive process concerning a reasonable accommodation for PLAINTIFF'S

26  disability—notwithstanding PLAINTIFF'S multiple requests concerning the need for such

27  accommodations. "The obligation [to engage in the interactive process] arises once the employer

28  becomes aware of the need to consider an accommodation.'" *Gelfo v. Lockheed Martin Corp.*, 140

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1   Cal. App. 4th 34, fn. 22.

2       78.    DEFENDANTS, and each of them, are employers within the meaning of the FEHA

3   and the regulations promulgated thereunder. DEFENDANTS employ individuals, including

4   PLAINTIFF, and conduct business within the State of California.

5       79.    Amidst severe personal challenges, including domestic abuse, PLAINTIFF requested

6   a reasonable accommodation in the form of time off to seek treatment for the resultant psychological

7   distress, explicitly informing DEFENDANTS of her need to undergo rehabilitation at a professional

8   facility.

9       80.    DEFENDANTS were fully aware of PLAINTIFF's mental health condition,

10   exacerbated by domestic abuse, as evidenced by PLAINTIFF's transparent communications

11   regarding her struggles and the need for rehabilitation. DEFENDANTS' prior knowledge of

12   PLAINTIFF's condition and the associated challenges she faced establish DEFENDANTS'

13   awareness of PLAINTIFF's limitations and the necessity for accommodation.

14       81.    PLAINTIFF demonstrated a willingness to engage in an interactive process by

15   proactively communicating her situation, the anticipated duration of her treatment, and her intention

16   to return to work post-rehabilitation. PLAINTIFF's efforts to keep DEFENDANTS informed, even

17   during her rehabilitation, underscore her commitment to engage in any necessary dialogue to facilitate

18   her return to work.

19       82.    DEFENDANTS failed to participate in a timely good-faith interactive process. This

20   failure is exemplified by the abrupt and unjustifiable termination of PLAINTIFF's employment,

21   despite prior approvals for leave extensions. This action by DEFENDANTS, particularly by JEN and

22   corroborated by GARZA, reflects a blatant disregard for engaging in any meaningful dialogue or

23   interactive process regarding PLAINTIFF's accommodation needs.

24       83.    DEFENDANTS could have reasonably accommodated PLAINTIFF's modest request

25   for an extension of her medical leave. The minor extension sought by PLAINTIFF, initially approved

26   by her supervisor KATY, was not an undue burden on DEFENDANTS' operations, further evidenced

27   by the willingness of another PETSMART store—Store #1092—to employ PLAINTIFF.

28       84.    At all relevant times, DEFENDANTS had actual and constructive knowledge of the

EXHIBIT -16-
COMPLAINT
Page 67

1  failure to engage in the good faith interactive process described and alleged herein, and condoned,

2  ratified and participated in the unlawful activity.

3       85.     DEFENDANTS' acts were malicious, oppressive or fraudulent with intent to vex,

4  injure, annoy, humiliate and embarrass PLAINTIFF, and in conscious disregard of the rights or safety

5  of PLAINTIFF and other employees of DEFENDANTS' and in furtherance of DEFENDANTS'

6  ratification of their wrongful conduct.

7       86.     DEFENDANTS' failure to engage in the good faith interactive process and to provide

8  reasonable accommodations for PLAINTIFF'S thoroughly disclosed disability were substantial

9  factors in causing PLAINTIFF'S harm.

10       87.     As a result of DEFENDANTS' failure to engage in the good faith interactive process

11  to accommodate PLAINTIFF'S disability, PLAINTIFF has sustained losses in earnings and other

12  employment benefits, and continues to suffer from emotional distress, mental and physical pain,

13  anguish, pain and suffering, loss of sleep, loss of appetite, anxiety, depression and shame.

14       88.     In light of DEFENDANTS' willful, knowing, and intentional failure to engage in the

15  good faith interactive process concerning PLAINTIFF'S disability, PLAINTIFF seeks an award of

16  punitive and exemplary, general and compensatory damages in an amount according to proof at trial.

17       89.     PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees.

18  PLAINTIFF will seek the recovery of her attorneys' fees and costs at the conclusion of this lawsuit.

19  **<u>FOURTH CAUSE OF ACTION</u>**

20  **Failure to Provide Reasonable Accommodations in Violation of FEHA et seq**

21  **(As to PETSMART, and DOES 1 through 20)**

22       90.     PLAINTIFF incorporates by reference, repeats, and realleges, each and every

23  preceding and subsequent paragraph as though fully set forth herein.

24       91.     At all times relevant to this Complaint, the FEHA (Cal. Govt. Code § 12900 et seq)

25  and its implementing regulations were in full force and effect and binding on the defendants.

26       92.     Pursuant to Gov. Code §§ 12940(m) and 12945, and California Labor Code §§ 1030

27  through 1033 employers are to provide reasonable accommodations that will allow an employee

28  suffering from a disability to perform the essential functions of his/her job. Accordingly, *California*

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

*Government Code* § 12940(m) makes it an unlawful employment practice from an employer to fail to make reasonable accommodations for a known physical disability of an employee. *Nealy v. City of Santa Monica* (2d Dist. 2015) 234 Cal.App.4th 359, 373. Thus, pursuant to the aforementioned statutes, DEFENDANTS, and each of them, were required to reasonably accommodate PLAINTIFF's restrictions and further accommodate her pursuant to her disability.

93.     At all times relevant herein, DEFENDANTS were PLAINTIFF's employer(s) at all times relevant herein; and PLAINTIFF was an employee of DEFENDANTS' at all times relevant herein.

94.     PLAINTIFF's enduring mental trauma and severe psychological distress, stemming from domestic abuse, are conditions limiting PLAINTIFF's major life activities.

95.     PLAINTIFF's condition necessitated reasonable accommodations in the form of leave and schedule adjustments.

96.     DEFENDANTS were fully aware of PLAINTIFF's condition, as evidenced by their prior approval of her leave for rehabilitation and their knowledge of her status as a victim of domestic violence.

97.     PLAINTIFF was able to perform her essential duties with reasonable accommodation, as demonstrated by her request for a temporary leave extension, which would not have hindered her ability to fulfill her role upon return.

98.     DEFENDANTS' refusal to honor the agreed-upon leave extension, despite prior approvals and assurances, constitutes a failure to provide reasonable accommodation. This abrupt and unjustified revocation directly contravenes the requirements for a reasonable accommodation. Thus, DEFENDANTS' denial of PLAINTIFF's modest request for an extension of her medical leave, coupled with their subsequent wrongful termination of her employment, constitutes a failure to provide reasonable accommodations.

99.     In perpetrating the above-described conduct, DEFENDANTS engaged in a pattern, practice, policy and custom of unlawfully failing to accommodate the disability of an employee. After having been made aware of PLAINTIFF'S disability, DEFENDANTS failed to accommodate PLAINTIFF. The conduct on the part of DEFENDANTS' denied PLAINTIFF protection of the

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1    employment rights contained in the statutes enumerated above.

2          100.    At all relevant times, DEFENDANTS had actual and constructive knowledge of the

3    failure to accommodate described and alleged herein, and condoned, ratified and participated in the

4    unlawful activity.

5          101.    The failure of DEFENDANTS and each of them, to engage in the interactive process

6    concerning disability accommodations or to provide any adequate education, training, and

7    information to personnel concerning policies and practices regarding disability accommodations

8    and/or discrimination, constituted deliberate indifference to the rights of employees, including

9    PLAINTIFF.

10         102.    DEFENDANTS' acts were malicious, oppressive or fraudulent with intent to vex,

11   injure, annoy, humiliate and embarrass PLAINTIFF, and in conscious disregard of the rights or safety

12   of PLAINTIFF and other employees of DEFENDANTS' and in furtherance of DEFENDANTS'

13   ratification of their wrongful conduct.

14         103.    As a result of DEFENDANTS' failure to reasonably accommodate PLAINTIFF'S

15   disability, PLAINTIFF has sustained and continues to suffer lost wages and benefits, emotional

16   distress, mental and physical pain, anguish, pain and suffering, loss of sleep, loss of appetite, anxiety,

17   depression and shame.

18         104.    DEFENDANTS failure to reasonably accommodate PLAINTIFF'S disability were

19   substantial factors in causing PLAINTIFF'S harm.

20         105.    In light of the willful, knowing, and intentional failure to reasonably accommodate

21   PLAINTIFF'S disability, PLAINTIFF seeks an award of punitive and exemplary damages in an

22   amount according to proof at trial.

23         106.    PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees.

24   PLAINTIFF will seek the recovery of her attorneys' fees and costs at the conclusion of this lawsuit.

25   / / /

26   / / /

27   / / /

28   / / /

EXHIBIT 8
-19-
COMPLAINT
Page 70

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

### FIFTH CAUSE OF ACTION

**Retaliation in Violation of FEHA**

**(As to PETSMART, and DOES 1 through 20)**

107.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

108.    This cause of action is brought pursuant to *California Government Code* section 12940(l) which provides that it is an unlawful employment practice for any employer to retaliate or otherwise discriminate against a person for requesting accommodations. Further, pursuant to Government Code section 12940(h), it is an unlawful employment practice "for any employer…to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Further, to establish a prima facie case of retaliation under FEHA, a plaintiff must show: (1) He or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal. 4th 1028, 1042. Adverse employment actions are not limited to ultimate actions such as termination or demotion.

109.    There is an adverse employment action if DEFENDANTS have taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affect the terms, conditions, or privileges of PLAINTIFF's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion.

110.    PLAINTIFF engaged in protected activities under FEHA by asserting her rights as a victim of domestic violence, an individual with a disability, and a loyal employee seeking reasonable accommodations for her mental health and well-being. As detailed herein, PLAINTIFF's requests for time off and subsequent approved leaves for attending court proceedings and rehabilitation constitute protected activities under FEHA. PLAINTIFF's explicit communication of her need for such accommodations, in light of her status as a victim of domestic violence and the accompanying mental health challenges, further strengthens her engagement in FEHA-protected activities.

111.    DEFENDANTS subjected PLAINTIFF to a series of adverse employment actions culminating in her wrongful termination. DEFENDANTS, in blatant disregard of their prior approvals and assurances, issued an ultimatum to PLAINTIFF, demanding her immediate return to work or face termination. This abrupt and unfounded demand, followed by the actual termination of PLAINTIFF's employment, constitutes an adverse employment action under FEHA.

112.    The temporal proximity between PLAINTIFF's request for leave extension due to her rehabilitation and DEFENDANTS' subsequent termination of her employment establishes an undisputable causal connection and prima facie case of retaliation. DEFENDANTS abrupt reversal of their decision, from approving PLAINTIFF's leave to terminating her employment, indicates that PLAINTIFF's engagement in protected activities was a substantial motivating reason for DEFENDANTS adverse employment actions.

113.    DEFENDANTS' retaliation was a substantial factor in causing PLAINTIFF's harm.

114.    DEFENDANTS' actions and lack thereof not only violated PLAINTIFF'S rights under FEHA, but also led to detrimental health consequences and inflicted substantial harm upon her, resulting in lost earnings, bonuses, commissions, and an inability to procure unemployment benefits. Additionally, PLAINTIFF has suffered, and continues to suffer, emotional and physical distress, mental anguish, anxiety, and depression, for which she is entitled to compensatory damages.

115.    Furthermore, DEFENDANTS' retaliatory conduct was committed with malice, fraud, and oppression, with the wrongful intention of causing PLAINTIFF emotional and physical harm, and in conscious disregard for PLAINTIFF'S rights. As such, PLAINTIFF is entitled to punitive damages against DEFENDANTS.

116.    The sequence of events described herein demonstrates that DEFENDANTS' actions were not only in retaliation for PLAINTIFF's engagement in protected activities under FEHA but also lacked any legitimate business justification.

117.    In light of the willful, knowing, and intentional retaliation by DEFENDANTS, PLAINTIFF seeks an award of punitive and exemplary damages in an amount to be proven at trial.

118.    PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees. PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

-21-
COMPLAINT

EXHIBIT 8
Page 72

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

## SIXTH CAUSE OF ACTION

### Discrimination in Violation of the California Family Rights Act

### (As to PETSMART, and DOES 1 through 20)

119.     PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

120.     Under the California Family Rights Act ("CFRA"), an employee is entitled to a leave of absence for a serious health condition.

121.     At all relevant times herein, DEFENDANTS, including its agents, employees, and representatives, were and are "covered" employers within the meaning of the CFRA (California Family Rights Act).

122.     Under this Act, an employee, such as PLAINTIFF, is entitled to a leave of absence for a serious health condition, such as psychological and mental health issues—severe depression and anxiety—stemming from domestic violence trauma. At all relevant times, PLAINTIFF suffered from these serious health conditions within the meaning of Cal. Gov. Code § 12945.2(b)(13), et seq.

123.     At all relevant times herein, DEFENDANTS were employers who regularly employed five (5) or more persons within the meaning of Cal. Gov't Code § 12945.2(b)(4).

124.     At all relevant times herein, PLAINTIFF had more than 12 months of service with DEFENDANTS and had worked at least 1,250 hours for DEFENDANTS during the previous 12 months and had taken less than 12 weeks of medical leave the past 12-month period within the meaning of Cal. Gov't Code §12945.2(a).

125.     Cal. Gov. Code § 12945.2(k) and California Code of Regulations ("CCR") § 11094 declare it an unlawful employment practice and unlawful retaliation for any employer to refuse to hire, or discharge, fine, suspend, expel, or discriminate against, any individual because of an individual's exercise of the right to family care and medical leave provided by Cal. Gov. Code § 12945.2(a).

126.     DEFENDANTS unlawfully discriminated against PLAINTIFF because of her serious health condition and medical leave of absence by terminating her in violation of Cal. Gov. Code §§ 12945.2(a), 12945.2(k), and 12945.2(q).

-22-

COMPLAINT

EXHIBIT 8
Page 73

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

127.   When PLAINTIFF communicated her disability to DEFENDANTS and sought reasonable accommodations for her serious health condition, she was subjected to unlawful discriminatory practices, retaliation, and consequently wrongful termination, as opposed to being provided with the required family care and medical leave as mandated by Cal. Gov. Code § 12945.2(a).

128.   Specifically, DEFENDANTS systematically denied PLAINTIFF her rightful meal and rest breaks, and refused to make accommodations for her schedule, exacerbating her medical condition. DEFENDANTS also failed to engage in an interactive process to identify suitable accommodations for PLAINTIFF, as required by law.

129.   Notwithstanding PLAINTIFF's repeated pleas to DEFENDANTS and submission of a comprehensive letter from her physician outlining necessary accommodations for her health, DEFENDANTS retaliated against PLAINTIFF, altered her work schedule detrimentally, and isolated her from the workplace community.

130.   PLAINTIFF's protected status, and/or exercise of and attempts to exercise her right to take CFRA leave was a substantial motivating factor in DEFENDANTS' decision to discriminate against PLAINTIFF as to the terms, conditions, and privileges of employment.

131.   As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, as alleged herein, PLAINTIFF has suffered general and special damages in a sum according to proof, but which amount exceeds the jurisdictional minimum of this Court, with interest thereon at the maximum legal rate.

132.   As a result of DEFENDANTS' aforesaid acts, PLAINTIFF claims general damages for mental and emotional distress and aggravation, and physical injury related to emotional distress, in an amount to be proven at the time of trial.

133.   The acts and conduct of DEFENDANTS' constituted "malice," "oppression" and/or "fraud" (as those terms are defined in Civil Code § 3294(c)), in that it was intended by DEFENDANTS to cause injury to PLAINTIFF or was despicable conduct which was carried on by DEFENDANTS with a willful and conscious disregard of the rights of PLAINTIFF.

134.   DEFENDANTS' acts were done fraudulently, maliciously and oppressively and with

EXHIBIT 8
-23-
COMPLAINT
Page 74

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1   the advance knowledge, conscious disregard, authorization, or ratification within the meaning of Civil

2   Code § 3294 on the part of DEFENDANTS' officers, directors, or managing agents of the business.

3   The actions and conduct of DEFENDANTS were intended to cause injury to PLAINTIFF and

4   constituted deceit and concealment of material facts known to DEFENDANTS, with the intention of

5   DEFENDANTS' part to deprive PLAINTIFF of property and legal rights, justifying an award of

6   exemplary and punitive damages in an amount according to proof.

7   ### SEVENTH CAUSE OF ACTION

8   **Retaliation in Violation of the California Family Rights Act**

9   **(As to PETSMART, and DOES 1 through 20)**

10   135.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every

11   preceding and subsequent paragraph as though fully set forth herein.

12   136.   Under the CFRA, an employee is entitled to a leave of absence for a serious health

13   condition.

14   137.   At all relevant times, DEFENDANTS, including its agents, employees and

15   representatives, were and are "covered" employers within the meaning of the CFRA.

16   138.   At all relevant times, PLAINTIFF suffered from a serious health condition,

17   psychological and mental health issues—severe depression and anxiety—stemming from domestic

18   violence trauma, which qualifies as a serious health condition within the meaning of Cal. Gov. Code

19   § 12945.2(b)(13), et seq.

20   139.   PLAINTIFF communicated her health condition to DEFENDANTS and made several

21   legitimate and reasonable requests for a workplace accommodation—a minor extension to her leave,

22   essential for the management of her health condition.

23   140.   At all relevant times herein, DEFENDANTS were employers who regularly employed

24   five (5) or more persons within the meaning of Cal. Gov't Code § 12945.2(b)(4).

25   141.   At all relevant times herein, PLAINTIFF had more than 12 months of service with

26   DEFENDANTS and had worked at least 1,250 hours for DEFENDANTS during the previous 12

27   months and had taken less than 12 weeks of medical leave the past 12-month period within the

28   meaning of Cal. Gov't Code §12945.2(a).

-24-
COMPLAINT

EXHIBIT 8
Page 75

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

142.   Cal. Gov. Code § 12945.2(k) and CCR § 11094 declare it an unlawful employment practice and unlawful retaliation for any employer to refuse to hire, or discharge, fine, suspend, expel, or discriminate against, any individual because of an individual's exercise of the right to family care and medical leave provided by Cal. Gov. Code § 12945.2(a).

143.   Despite PLAINTIFF'S eligibility for accommodations and DEFENDANTS' obligations under the CFRA, DEFENDANTS unlawfully denied PLAINTIFF's requests for necessary adjustments and continued their violations of California Labor Laws.

144.   In direct response to PLAINTIFF's request for a scheduling change, necessitated by her recovery from domestic violence and her exposure of DEFENDANTS' illegal labor practices, DEFENDANTS engaged in retaliatory behavior. This retaliation included altering PLAINTIFF's schedule, disregarding her requests for accommodations, escalating hostility, and ultimately led to her wrongful termination from her employment with DEFENDANTS. Despite PLAINTIFF's sixteen (16) years of exceptional service and unwavering adherence to DEFENDANTS' standards, DEFENDANTS chose to dismiss her under the unintelligible pretext of job abandonment—notwithstanding PLAINTIFF never abandoned her job, and in fact, kept regular communications with DEFENDANTS and informed them of the status of her completion of the rehabilitation program.

145.   This action, combined with the refusal to allocate any of PLAINTIFF's accrued PTO towards her modest request for a leave extension, exemplifies DEFENDANTS' blatant disregard for PLAINTIFF's rights and contributions, further aggravated by their systematic failure to compensate for all earned commissions and indifference to PLAINTIFF's on-the-job injuries and personal hardships.

146.   DEFENDANTS unlawfully retaliated against PLAINTIFF because of her serious health condition and medical leave of absence by terminating her in violation of Cal. Gov. Code §§ 12945.2(a), 12945.2(k), and 12945.2(q).

147.   PLAINTIFF's protected status, and/or exercise of and attempts to exercise her right to take CFRA leave was a substantial motivating factor in DEFENDANT's decision to terminate PLAINTIFF, discharge PLAINTIFF, and/or discriminate against PLAINTIFF as to the terms, conditions, and privileges of employment.

148.     As a direct, foreseeable, and proximate result of the conduct of DEFENDANTS, as alleged herein, PLAINTIFF has suffered general and special damages in a sum according to proof, but which amount exceeds the jurisdictional minimum of this Court, with interest thereon at the maximum legal rate.

149.     As a result of the aforesaid acts of DEFENDANTS, PLAINTIFF claims general damages for mental and emotional distress and aggravation, and physical injury related to emotional distress, in an amount to be proven at the time of trial.

150.     The DEFENDANTS' actions and conduct constituted "malice," "oppression" and/or "fraud" (as those terms are defined in Civil Code § 3294(c)), in that it was intended by DEFENDANTS to cause injury to PLAINTIFF or was despicable conduct which was carried on by DEFENDANTS with a willful and conscious disregard of the rights of PLAINTIFF.

151.     DEFENDANTS' acts were done fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, or ratification within the meaning of Civil Code § 3294 on the part of DEFENDANT's officers, directors, or managing agents of the business. The actions and conduct of DEFENDANT were intended to cause injury to PLAINTIFF and constituted deceit and concealment of material facts known to DEFENDANT, with the intention of DEFENDANT's part to deprive PLAINTIFF of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

**EIGHTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

**(As to PETSMART, and DOES 1 through 20)**

152.     PLAINTIFF incorporates by reference, repeats, and realleges, all preceding and subsequent paragraphs as though fully set forth herein.

153.     DEFENDANTS were, at all relevant times, PLAINTIFF's legal employers, possessing control over PLAINTIFF's work conditions, hours, and wages, as evidenced by the facts enumerated above. As such, PLAINTIFF was DEFENDANTS' employee, and DEFENDANTS were PLAINTIFF's legal employer(s).

154.     Crucially, the nexus between PLAINTIFF's protected activity and her termination is

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 8
-26-
COMPLAINT
Page 77

palpable and irrefutable. PLAINTIFF's status as a victim of domestic violence and her subsequent mental health challenges necessitated reasonable accommodations—a leave of absence for rehabilitation, as recognized under the FEHA. The leave approval and abrupt revocation thereof, coupled with the subsequent termination, unmistakably points to a retaliatory motive, penalizing PLAINTIFF for exercising her rights to seek treatment and accommodations for her condition.

155.    Furthermore, the pretextual nature of PLAINTIFF's termination is glaringly evident. DEFENDANTS' claim of 'job abandonment' is a thinly veiled attempt to mask their discriminatory motives. The fact that PLAINTIFF had her leave initially approved, coupled with her demonstrated commitment to returning to work post-rehabilitation, negates any notion of abandonment.

156.    Moreover, the cumulative impact of DEFENDANTS' actions—neglecting PLAINTIFF's safety in the workplace, systemic denial of meal and rest breaks, and the failure to pay earned commissions—further illustrates a pattern of disregard for PLAINTIFF's rights and well-being, exacerbating the egregiousness of the wrongful termination.

157.    In light of these facts, it is manifestly clear that PLAINTIFF's termination was not only wrongful but also a blatant violation of the public policy that seeks to protect employees from discriminatory and retaliatory actions by their employers. The DEFENDANTS' actions represent a flagrant disregard for the statutory protections afforded to employees, particularly those in vulnerable situations similar to PLAINTIFF.

157.    The facts establish that DEFENDANTS wrongfully discharged PLAINTIFF in direct violation of public policy. This public policy, rooted in the essential tenets of labor laws, whistleblowing protections and ethical corporate governance, seeks to shield employees like PLAINTIFF from retaliatory and hostile workplace practices similar to those she was subjected to.

158.    PLAINTIFF has suffered considerable harm as a result of the wrongful termination. This harm is both financial, given the loss of her income and emotional wellbeing in light of the stress-induced mental health challenges she has endured as a result of DEFENDANTS' callous disregard for her rights. In wrongfully discharging PLAINTIFF, said managing agents and/or officers of DEFENDANTS, acted with oppression, fraud, and malice as those terms are used in California Civil Code 3294. As such, PLAINTIFF is entitled to an award of punitive damages.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE  909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

159.    DEFENDANTS' wrongful discharge of PLAINTIFF was a substantial factor in causing PLAINTIFF harm. DEFENDANTS' numerous violations of the Labor Code, coupled with their blatant disregard for public policy, have led to a state of enduring harm for PLAINTIFF, both in her professional capacity and to her personal well-being.

160.    As a result of the aforesaid acts, PLAINTIFF has lost, and will continue to lose, substantial earnings, promotional opportunities, and fringe benefits. Furthermore, PLAINTIFF has suffered and will continue to suffer other actual, consequential, and incidental financial losses, in an amount to be proven at trial in excess of the jurisdictional minimum of this Court.

161.    As a proximate result of the foregoing, PLAINTIFF has become mentally upset, distressed, embarrassed, humiliated, and aggravated in a sum in excess of the jurisdictional minimum of this Court. PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees. PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit. PLAINTIFF is also entitled to exemplary, general, and compensatory damages and attorney's fees in amounts to be proven at trial, in addition to interest thereon and any and all other remedies and damages available under applicable laws.

## NINTH CAUSE OF ACTION

### Interference with, Restraint, and Denial of Medical Leave in Violation of the CFRA

### (As to PETSMART, and DOES 1 through 20)

162.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

163.    At all times relevant to this action, PLAINTIFF was employed by DEFENDANTS.

164.    At all times relevant to this action, PLAINTIFF suffered from a serious health condition within the meaning of Gov't Code §§ 12945.2(b)(13), et seq.

165.    At all relevant times herein, DEFENDANTS were employers who regularly employed five (5) or more persons within the meaning of Cal. Gov't Code § 12945.2(b)(4).

166.    At all relevant times herein, PLAINTIFF had more than 12 months of service with DEFENDANTS and had worked at least 1,250 hours for DEFENDANTS during the previous 12 months and had taken less than 12 weeks of medical leave the past 12-month period within the

EXHIBIT -28-
COMPLAINT
Page 79

1    meaning of Cal. Gov't Code §12945.2(a).

2        167.    DEFENDANTS unlawfully interfered with, restrained, or denied PLAINTIFF's right

3    to a medical leave of absence because of her serious health condition and medical leave of absence

4    by terminating her in violation of Cal. Gov't Code §§ 12945.2(a), 12945.2(k), 12945.2(q).

5        168.    DEFENDANTS' decision to terminate PLAINTIFF was substantially motivated by

6    PLAINTIFF's serious health condition, medical leave of absence, and the potential inconvenience

7    that it could cause to DEFENDANTS.

8        169.    As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF has suffered

9    and continues to suffer losses in earnings and other benefits, as her ability to obtain such employment

10   and earning capacity have been diminished. The exact amount of such expenses and losses is

11   presently unknown, and PLAINTIFF will seek leave of court to amend this Complaint to set forth the

12   exact amount when ascertained.

13       170.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered

14   general damages, as she was psychologically injured. Such injuries have caused, and continue to

15   cause PLAINTIFF great mental and physical pain and suffering, and loss of enjoyment, in an amount

16   in excess of this Court's minimum jurisdictional threshold.

17       171.    As a result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the

18   future, will be required to employ physicians and incur additional medical and incidental expenses.

19   The exact amount of such expenses is presently unknown to PLAINTIFF, and she will seek leave of

20   court to amend this Complaint to set forth the exact amount when it has been ascertained.

21       172.    PLAINTIFF is informed and believes that the employees, officers, directors, and/or

22   managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were

23   carried out with full knowledge of the extreme risk of injury involved, and with willful and conscious

24   disregard for PLAINTIFF's rights. Accordingly, an award of punitive damages is warranted.

25       173.    PLAINTIFF is informed and believes that the actions of DEFENDANT's employees,

26   officers, directors, and/or managing agents, were undertaken with the prior approval, consent, and

27   authorization of DEFENDANTS, and were subsequently authorized and ratified by it as well by and

28   through its officers, directors, and/or managing agents.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

-29-
EXHIBIT 8
COMPLAINT

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

**TENTH CAUSE OF ACTION**

**Whistleblower Retaliation in Violation of Labor Code §§ 98.6 and 1102.5**

**(As to PETSMART, and DOES 1 through 20)**

174.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

175.    DEFENDANTS were PLAINTIFF'S legal employer at all times relevant herein; and PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

176.    PLAINTIFF's Whistleblower Retaliation Cause of Action is predicated on the crystal-clear reality that DEFENDANTS systematically retaliated against PLAINTIFF for disclosing information that he reasonably believed to be in violation of state and federal laws. Moreover, DEFENDANTS subjected PLAINTIFF to abusive conduct, with malice, that a reasonable person would find hostile, offensive, and unrelated to DEFENDANTS' legitimate business interests, thereby giving rise to additional liability.

177.    At all times herein mentioned, Labor Code § 1102.5 was in full force and effect to promote a "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation." See *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 77 (Cal. 1998). Specifically, Labor Code § 1102.5(b) prohibits an employer from retaliating against an employee "for disclosing information, or because the employer believes that the employee disclosed or may disclose information…to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation…"

178.    Moreover, PLAINTIFF was subjected to abusive conduct within the meaning of Government Code section 12950.1(g)(2). "Abusive conduct" is defined to mean "conduct of an employer or employee in the workplace, with malice, that a reasonable person would find hostile, offensive, and unrelated to an employer's legitimate business interests." [Cal. Gov. Code § 12950.1.]

179.    PLAINTIFF's disclosure to DEFENDANTS about the domestic violence she faced, which spilled into her workplace and required PLAINTIFF to attend a rehabilitation facility,

constitutes a protected activity. By informing DEFENDANTS of these personal safety threats, PLAINTIFF aimed to safeguard not only her well-being but also to alert DEFENDANTS of potential risks at the workplace.

180.    PLAINTIFF's open communication with DEFENDANTS about her need for time off due to court proceedings and mental health rehabilitation, related to her status as a victim of domestic violence, served to inform DEFENDANTS of disruptions linked to a serious personal and workplace issue. This communication, though personal in nature, effectively served as whistleblowing by highlighting how her personal crisis was affecting her workplace environment and necessitating legal and medical intervention.

181.    Furthermore, despite PLAINTIFF's initial leave being approved by DEFENDANTS, specifically, KATY, when PLAINTIFF requested an extension for complete recuperation, DEFENDANTS presented an ultimatum to resume work immediately or face termination.

182.    These reports, integral to ensuring workplace safety and compliance with legal standards, constitute a clear exercise of PLAINTIFF's rights under whistleblower protection laws.

183.    The retaliatory actions by DEFENDANTS were executed with malice and were unrelated to DEFENDANTS' legitimate business interests. These actions were hostile, offensive, and constitute "abusive conduct" as defined under California Government Code section 12950.1(g)(2).

184.    By engaging in the above-referenced acts and omissions, DEFENDANTS retaliated against PLAINTIFF because she participated in protected activities pursuant to Cal. Govt. Code § 12940 et seq., and/or DEFENDANTS' behalf that PLAINTIFF may disclose such information of a governmental agency.

185.    As a result of DEFENDANTS' unlawful conduct, PLAINTIFF was harmed. PLAINTIFF suffered and continues to suffer economic loss or disadvantage both as earnings and benefits, and emotional distress, including depression, decline in health, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. DEFENDANTS' unlawful retaliation was a substantial factor in causing PLAINTIFF's harm. PLAINTIFF is entitled to and will seek exemplary, general, and compensatory damages and attorney's fees and costs in amounts to be proven at trial in addition to interest thereon and any other remedies and damages available under the applicable laws.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 3
-31-
COMPLAINT
Page 82

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

**ELEVENTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code § 6310**

**(As to PETSMART, and DOES 1 through 20)**

186.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

187.   PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

188.   California Labor Code § 6310 protects an employee from retaliation for complaints made to his employer regarding working condition or workplace practices which the employee reasonably believes the be unsafe. PLAINTIFF was or should have been protected by Labor Code § 6310 from retaliation for PLAINTIFF's complaints regarding the broken and unsafe beverage carts she, and other beverage cart attendants, were forced to drive in addition to working near a group of homeless men as described in this complaint.

189.   PLAINTIFF made multiple complaints regarding workplace safety, as described herein, to DEFENDANTS, and other managing agents. Said complaints regarding workplace safety include but are not limited to, sustaining multiple injuries from dog bites.

190.   PLAINTIFF's complaints regarding the unsafe working conditions – all of which were activities protected from retaliation under Labor Code § 6310 – was a contributing, substantial, and motivating factor in DEFENDANTS' continued adverse employment actions against PLAINTIFF. As such, DEFENDANT violated Labor Code § 6310 in retaliating against and subjecting PLAINTIFF to adverse employment actions, including but not limited to wrongful termination, based on PLAINTIFF's reasonable and justifiable complaints.

191.   As a result of the aforesaid acts, PLAINTIFF has lost, and will continue to lose, substantial earnings, promotional opportunities, fringe benefits and has suffered and will suffer other actual, consequential and incidental financial losses, in an amount to be proven at trial in excess of the jurisdictional minimum of this court.

192.   DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's harm.

193.   As a result of the foregoing, PLAINTIFF has become mentally upset, distressed, embarrassed, humiliated, and aggravated in a sum in excess of the jurisdictional minimum of this

court. PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees. PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit. Accordingly, PLAINTIFF is entitled to exemplary, general, and compensatory damages and attorney's fees in amounts to be proven at trial, in addition to interest thereon and any and all other remedies and damages available under applicable law.

### **TWELFTH CAUSE OF ACTION**

### **Negligent Hiring, Retention, or Supervision**

### **(As to PETSMART, and DOES 1 through 20)**

194.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

195.   California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee. (See *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054.) Negligence liability will be imposed on an employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (See *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.) Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815.)

196.   At all relevant times herein, PLAINTIFF was hired by and employed by DEFENDANTS.

197.   At all times relevant herein, DEFENDANTS, and each of them, either jointly or severally, had an employer-employee relationship with JEN, whom they placed in managerial and supervisory position over PLAINTIFF.

198.   DEFENDANTS owed a duty to exercise reasonable care in the hiring, retention, and supervision of their employees, including JEN, who was responsible for managing the workplace, ensuring safety, and respecting labor rights, including those related to staffing, work hours, and Family Medical Leave Act (FMLA) rights.

199.   Contrary to their duty of care, DEFENDANTS negligently hired JEN despite foreseeable risks posed by her deficient management styles.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

EXHIBIT -33-
COMPLAINT
Page 84

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

200.    JEN demonstrated unfitness or incompetence in her role as a supervisor, particularly evidenced by her disregard for PLAINTIFF's legally protected rights. JEN's actions, including the ultimatum to PLAINTIFF to either return to work immediately or face termination, despite an approved leave extension, clearly indicate a lack of competence and understanding of legal employment practices.

201.    DEFENDANTS, through their managerial hierarchy and human resources department, knew or should have known of JEN's unfitness. The approval and subsequent revocation of PLAINTIFF's leave, coupled with DEFENDANTS' knowledge of PLAINTIFF's legally protected situation, highlight a negligent disregard for proper supervisory conduct.

202.    The particular harm that DEFENDANTS knew or should have known would materialize did in fact occur, including but not limited to, PLAINTIFF's physical and emotional deterioration, wrongful termination, and financial loss.

203.    As a result of DEFENDANTS' negligent hiring, retention, and supervision of JEN, PLAINTIFF has suffered and continues to suffer emotional distress, mental and physical pain, anguish, pain and suffering, loss of sleep, loss of appetite, anxiety, depression and shame.

204.    In light of DEFENDANTS' willful, knowing, and intentional acts and/or omissions, PLAINTIFF seeks an award of punitive and exemplary damages in an amount according to proof at trial. PLAINTIFF has also incurred and continues to incur legal expenses and attorneys' fees. PLAINTIFF will seek the recovery of her attorneys' fees and costs at the conclusion of this lawsuit.

## THIRTEENTH CAUSE OF ACTION

### Work Environment Harassment in Violation of Gov't. Code §§ 12923, 12940(j)

### (As to all DEFENDANTS)

205.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

206.    The conduct of DEFENDANTS', and each of them, created a hostile work environment for PLAINTIFF, making the conditions of her employment intolerable in direct contravention of various statutes and state law decisions, including but not limited to California

EXHIBIT 3
-34-
COMPLAINT
Page 85

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

Government Code section 12940(j). PLAINTIFF was subjected to a hostile work environment due to, including but not limited to, harassment based on disability.

207.    Furthermore, PLAINTIFF faced severe and pervasive harassment due to her protected status as a victim of domestic violence. This harassment manifested in multiple forms, including the threat of termination and actual wrongful termination, which directly correlates to her personal life upheavals and her status as a domestic violence survivor.

208.    The conduct exhibited by DEFENDANTS, particularly by JEN, was not only severe but also pervasive. It included undermining PLAINTIFF's professional integrity, unjustified termination, and tarnishing her reputation as "non-rehirable." Such actions are demonstrably severe and pervasive, affecting PLAINTIFF's psychological well-being and career prospects.

209.    A reasonable individual in PLAINTIFF's circumstances would undeniably perceive the work environment as hostile, intimidating, offensive, oppressive, and abusive. The conduct of DEFENDANTS, especially in light of PLAINTIFF's vulnerability as a survivor of domestic abuse, clearly meets this criterion.

210.    The harassing conduct by other employees and/or clients was ratified by DEFENDANTS when PLAINTIFF complained about the harassing conduct described above and her complaints were ignored, never properly investigated, and/or resulted in PLAINTIFF being reprimanded by way of being told that DEFENDANTS now deemed PLAINTIFF as a "liability" due to her personal life upheavals.

211.    Such harassment was so severe and pervasive that it altered the conditions of PLAINTIFF's employment, creating a hostile work environment and thereby further endangering PLAINTIFF's physical health and making her ability to work under such conditions intolerable, and in fact, impossible, due to her being unjustifiably labelled as "non-rehirable."

212.    As a result of DEFENDANTS', and each of their disparate treatment of PLAINTIFF because she is a member of a protected class based on her disability and status as a victim of domestic violence, PLAINTIFF was harmed.

213.    As an actual and proximate result of DEFENDANTS', and each of their harassment and retaliation of PLAINTIFF, PLAINTIFF has sustained and continues to sustain losses in earnings

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1    and other employment benefits.

2       214.    As an actual and proximate result of DEFENDANTS', and each of their harassment

3    and retaliation of PLAINTIFF, PLAINTIFF has sustained and continues to suffer emotional distress,

4    mental and physical pain, anguish, pain and suffering, loss of sleep, loss of appetite, anxiety,

5    depression and shame.

6       215.    DEFENDANTS', and each of their harassment and retaliation of PLAINTIFF were

7    substantial factors in causing PLAINTIFF's harm.

8       216.    The harassment and hostile work environment have also resulted in PLAINTIFF

9    incurring substantial medical and therapeutic expenses as she seeks treatment for the psychological

10   and physical effects of the harassment and abuse endured in her workplace.

11      217.    PLAINTIFF has also incurred, and continues to incur, substantial legal expenses and

12   attorneys' fees in seeking redress and remedy for the harm caused by DEFENDANTS.

13      218.    Therefore, PLAINTIFF seeks general damages in an amount to be proven at trial,

14   including but not limited to compensation for pain and suffering, emotional distress, and loss of

15   enjoyment of life.

16      219.    PLAINTIFF also seeks special damages, including but not limited to, loss of past and

17   future earnings, loss of employment benefits, medical expenses, and legal fees, in an amount to be

18   proven at trial, and further seeks punitive damages against DEFENDANTS in an amount appropriate

19   to punish DEFENDANTS for their conduct and to deter similar conduct in the future, as permitted

20   by law.

21                           **FOURTEENTH CAUSE OF ACTION**

22      **Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA**

23                        **(As to PETSMART, and DOES 1 through 20)**

24      220.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every

25   preceding and subsequent paragraph as though fully set forth herein.

26      221.    At all times relevant herein, PLAINTIFF was an employee of DEFENDANTS, and

27   DEFENDANTS were PLAINTIFF'S employers within the meaning of FEHA.

28      222.    Pursuant to California Government Code section 12940(k), it is an unlawful practice

EXHIBIT -36-
COMPLAINT
Page 87

"for an employer...to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." In addition, FEHA creates a statutory tort for failure to prevent discrimination and harassment. It is also illegal for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring, and this "failure to prevent" is separately actionable under the California Fair Employment and Housing Act ("the FEHA"). Government Code § 12940(k); *Trujillo v. North Co. Transit Dist*. (1998) 63 Cal.App.4th 280, 286

223. Based on California Government Code section 12940(k) and the precedent set in *Trujillo v. North Co. Transit Dist*., the circumstances that PLAINTIFF was subjected to confirm that DEFENDANTS failed to prevent discrimination, harassment, and retaliation, thereby violating FEHA.

224. PLAINTIFF was subjected to discrimination and retaliation as alleged in this Complaint. DEFENDANTS failed to take all reasonable steps to prevent the discrimination harassment, retaliation, in direct contravention of various statutes and state law decisions, including but not limited to California Government Code Section 12940(k). In fact, DEFENDANTS endorsed, engaged in, and caused the numerous illegal acts by failing to do anything to address the issues herein—and instead took several adverse employment actions against PLAINTIFF, which led to her wrongful termination.

225. Moreover, throughout PLAINTIFF's tenure, she was subjected to a pattern of discriminatory, harassing, and retaliatory conduct by DEFENDANTS. This pattern includes, but is not limited to, a gross mishandling of PLAINTIFF's status as a victim of domestic violence, systematic denial of meal and rest breaks, non-payment of earned commissions, and an abject disregard for her physical safety and mental health.

226. DEFENDANTS, despite having full knowledge of PLAINTIFF's circumstances, notably her status as a domestic abuse survivor requiring specialized treatment and accommodations, egregiously failed to take reasonable steps to ensure a safe and non-discriminatory work environment. Their failure is exemplified by their callous response to her requests for leave, the wrongful termination, and the subsequent barring from future employment opportunities within PETSMART's other stores.

227. Despite PLAINTIFF'S repeated pleas to DEFENDANTS, they persistently failed to

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1  engage in the interactive process or offer suitable accommodations, which is a direct violation of their

2  duties under the FEHA.

3       228.    DEFENDANTS failure to take reasonable steps to prevent the hostile work

4  environment, harassment, discrimination, and retaliation was a substantial factor in causing

5  PLAINTIFF'S harm.

6       229.    As a result of the failure to prevent the hostile working environment, harassment,

7  discrimination, beratement, and retaliation, PLAINTIFF has sustained and continues to suffer

8  emotional distress, mental and physical pain, anguish, pain and suffering, loss of sleep, loss of

9  appetite, anxiety, depression, and shame.

10       230.    In light of DEFENDANTS willful, knowing, and intentional failure to prevent a

11  hostile working environment, harassment, discrimination, and retaliation, PLAINTIFF seeks an

12  award of punitive and exemplary damages in an amount according to proof at trial.

13       231.    PLAINTIFF has incurred and continued to incur legal expenses and attorney's fees.

14  PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit.

### FIFTEENTH CAUSE OF ACTION

**Breach of Contract**

**(As to PETSMART, and DOES 1 through 20)**

18       232.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every

19  preceding and subsequent paragraph as though fully set forth herein.

20       233.    As detailed herein, PLAINTIFF and DEFENDANTS entered into a valid and binding

21  employment contract. (See, **Exhibit "B"** attached herein). The terms of this contract included, among

22  other things, an hourly wage for PLAINTIFF and a compensation plan providing for payment of

23  commissions. (*Id*.).

24       234.    Under the terms of PLAINTIFF's employment, she was entitled to a 50% commission

25  for every dog groomed. (*Id*.). This commission structure forms a fundamental part of the contractual

26  agreement between PLAINTIFF and DEFENDANTS. PLAINTIFF, by grooming 7-10 dogs per day

27  over a period of sixteen years, generated significant profits for DEFENDANTS, and in return, was

28  contractually entitled to her share of the commissions.

EXHIBIT -38-
COMPLAINT
Page 89

235.   DEFENDANTS expressly and impliedly agreed to comply with the terms of the contract, including but not limited to, the payment of PLAINTIFF's hourly wage and commissions as stipulated in the employment agreement. (*Id.*).

236.   PLAINTIFF has met all conditions necessary for earning these commissions. PLAINTIFF diligently performed all requisite duties under the employment agreement, exemplifying exceptional service and dedication. Her performance, evidenced through consistent positive reviews, salary increments, and a history of meeting and exceeding job expectations, establishes her compliance with all significant obligations under the agreement.

237.   As such, PLAINTIFF fully performed her obligations under the contract, and at all times complied with the reasonable expectations of DEFENDANTS, including but not limited to, exceeding assigned targets for the number of dogs groomed, generating substantial profits for DEFENDANTS.

238.   Despite grooming 7-10 dogs per day, DEFENDANTS systematically failed to remit complete commission payments, thereby breaching the fundamental financial terms of their agreement with PLAINTIFF. Thus, despite PLAINTIFF's fulfillment of her contractual obligations, DEFENDANTS have failed to compensate PLAINTIFF for all her earned commissions. This failure constitutes a breach of the express terms of the employment contract. DEFENDANTS' non-payment of these commissions is not only a violation of the contractual terms but also indicative of a disregard for the fundamental principles of fairness and equity in the employer-employee relationship.

239.   Moreover, DEFENDANTS breached the contract by failing to adhere to the terms of the employment agreement and the implied covenant of good faith and fair dealing. This breach is manifest in their failure to honor the approved leave and subsequent extension, wrongful termination of PLAINTIFF, and subsequent actions that impeded her employment opportunities.

240.   DEFENDANTS' failure to pay the full commissions owed to PLAINTIFF and their failure in general to adhere to the terms of the employment agreement was a substantial factor in causing her harm. This breach not only inflicted immediate financial hardship but also contributed to a cascade of adverse consequences, including psychological distress and economic instability, magnified by DEFENDANTS' subsequent wrongful termination of PLAINTIFF's employment.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

EXHIBIT 8
-39-
COMPLAINT
Page 90

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

241.   PLAINTIFF was damaged as a direct and proximate result of DEFENDANTS' breaches of the employment agreement, suffering significant financial loss in the form of unpaid commissions, emotional distress, anxiety, and other physical and emotional injuries.

242.   DEFENDANTS' breaches of contract were willful, malicious, and perpetrated in conscious disregard of PLAINTIFF's rights, thereby entitling PLAINTIFF to punitive damages.

243.   As a direct and proximate result of DEFENDANTS' breach of contract to pay earned wages and commissions, PLAINTIFF has been harmed in an amount to be proven at trial.

244.   In light of these facts, PLAINTIFF respectfully requests the Court to recognize DEFENDANTS' clear and willful breach of contract. DEFENDANTS' actions not only deprived PLAINTIFF of her rightful earnings but also displayed a blatant disregard for the ethical and legal standards governing employer-employee relationships. Therefore, PLAINTIFF seeks compensation for lost wages, bonuses, commissions, benefits, and damages for emotional distress, alongside punitive damages due to DEFENDANTS' egregious conduct.

## SIXTEENTH CAUSE OF ACTION

### Negligent and Intentional Interference with Prospective Economic Advantage

### (As to PETSMART, and DOES 1 through 20)

245.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

246.   PLAINTIFF had an economic relationship with PETSMART Store #1092 that probably would have resulted in an economic benefit. After wrongful termination by DEFENDANTS, PLAINTIFF sought employment at PETSMART Store #1092, which acknowledged her stellar 16-year tenure and expressed intent to hire her, pending a standard reference check.

247.   DEFENDANTS, particularly through the actions of JEN, were aware of this prospective employment relationship, as evidenced by the subsequent influence exerted on PETSMART Store #1092.

248.   DEFENDANTS, particularly JEN, knew or should have known that their actions would disrupt this relationship. JEN's decision to provide negative feedback to PETSMART Store

EXHIBIT -40-
COMPLAINT
Page 91

#1092, despite PLAINTIFF's commendable service history, demonstrates a failure to act with reasonable care.

249.    DEFENDANTS engaged in wrongful conduct, including misrepresentation and potential violation of employment laws, by portraying PLAINTIFF in a negative light, thus influencing PETSMART Store #1092's decision.

250.    The relationship was disrupted when PETSMART Store #1092 rescinded the employment offer, directly attributable to DEFENDANTS' wrongful actions, resulting in continued unemployment and financial hardship for PLAINTIFF.

251.    DEFENDANTS' actions were a substantial factor in causing the harm, as the withdrawal of the job offer from PETSMART Store #1092 followed DEFENDANTS' negative interference.

252.    DEFENDANTS, particularly through JEN, engaged in conduct deemed wrongful by misrepresenting PLAINTIFF's capabilities and character, with the intent to disrupt or knowledge that disruption was substantially certain to occur.

253.    As a result of DEFENDANTS' intentional interference, the economic relationship was disrupted, causing PLAINTIFF significant harm, including loss of prospective employment and financial stability.

254.    DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's harm, directly leading to the loss of a prospective employment opportunity.

255.    In light of the foregoing, PLAINTIFF respectfully submits that DEFENDANTS are liable for both negligent and intentional interference with prospective economic relations. The actions and decisions of DEFENDANTS, particularly through JEN, have not only disrupted a valuable economic opportunity for PLAINTIFF but have also inflicted significant emotional and financial harm. PLAINTIFF seeks appropriate remedies, including compensatory and punitive damages, to address the egregious wrongs committed by DEFENDANTS.

/ / /

/ / /

/ / /

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

**SEVENTEENTH CAUSE OF ACTION**

**Violation of Labor Code § 2751**

**(As to PETSMART, and DOES 1 through 20)**

256.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

257.    Pursuant to Labor Code § 2751(a), an employer which pays an employee commissions is required to reduce the terms of earning those commissions in a contract which "shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

258.    Pursuant to Labor Code § 2751(b), "[t]he employer shall give a signed copy of the [commission] contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee."

259.    Thus, the agreement must explain the method by which the commissions shall be computed and paid, and the commission plan must be signed by the employer and the employer must obtain a signed receipt from each employee.

260.    At all relevant times, PLAINTIFF was employed by DEFENDANTS and was paid, in part, by commission as an integral part of her compensation plan.

261.    DEFENDANTS were obligated under the terms of the Compensation Plan and California Labor Code § 2751 to provide a written agreement that detailed the calculation and payment of commissions earned by PLAINTIFF.

262.    DEFENDANTS unilaterally and unlawfully altered the language of the Compensation Plan, specifically the "projected gallons" clause, which directly impacted the calculation of PLAINTIFF's commissions, and retroactively applied this change without providing PLAINTIFF with a revised written agreement in violation of California Labor Code § 2751.

263.    Throughout the tenure of her employment with DEFENDANTS, PLAINTIFF was entitled to a 50% commission for every dog she groomed. On average, PLAINTIFF groomed 7-10 dogs per day, yet DEFENDANTS failed to compensate PLAINTIFF for all of her earned commissions.

264.    DEFENDANTS made unilateral and arbitrary changes to the calculations and

1  payments of commissions earned by PLAINTIFF, and retroactively applied these changes without

2  providing PLAINTIFF with a revised written agreement in violation of California Labor Code § 2751.

3    265.   DEFENDANTS knowingly withheld substantial commissions due to PLAINTIFF

4  under the terms of the original Compensation Plan, constituting a breach of contract and violation of

5  California Labor Code § 2751.

6    266.   As a direct and proximate result of DEFENDANTS' violation of California Labor

7  Code § 2751, PLAINTIFF has suffered, and continues to suffer, substantial economic damages in the

8  form of unpaid commissions.

9    267.   DEFENDANTS' actions in violation of California Labor Code § 2751 were willful,

10  oppressive, and perpetrated in conscious disregard of PLAINTIFF's rights, thereby entitling

11  PLAINTIFF to punitive damages.

12    268.   Thus, DEFENDANTS failed to provide PLAINTIFF with a written commission

13  agreement stating the method by which the commissions would be paid and calculated in violation

14  of Labor Code section 2751.

15    269.   DEFENDANTS' violation of Labor Code section 2751 induced PLAINTIFF to

16  continue working for DEFENDANTS and was used by DEFENDANTS to refuse to pay PLAINTIFF

17  the complete and full amount of the commissions she properly earned during her employment with

18  DEFENDANTS.

19    270.   As a result of DEFENDANTS' violation of Labor Code § 2751, PLAINTIFF was

20  damaged in an amount to be proven at the time of trial, as well as interest, attorneys' fees and costs.

21  **EIGHTEENTH CAUSE OF ACTION**

22  **Discrimination Against Victims of Domestic Violence – Labor Code § 230 and 230.1**

23  **(As to PETSMART, and DOES 1 through 20)**

24    271.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every

25  preceding and subsequent paragraph as though fully set forth herein.

26    272.   California Labor Code § 230 prohibits an employer from discriminating or retaliating

27  against an employee who is a victim of domestic violence, sexual assault, and/or stalking and requires

28  employers to provide reasonable accommodations for a victim of domestic violence, sexual assault,

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

and/or stalking who requests an accommodation for the safety of the victim while at work. An employer is required to engage in a timely, good faith, and interactive process with the employee to determine effective reasonable accommodations and consider the danger facing an employee.

273. California Labor Code § 230.1 prohibits employers with 25 or more employees from discriminating or retaliating against an employee who is a victim of domestic violence, sexual assault, and/or stalking from taking time off of work for the purpose of seeking medical attention for related injuries, to obtain services and/or psychological counseling related to experiences of domestic violence, sexual assault and/or stalking, and/or to take action to increase the employee's safety from future domestic violence, sexual assault, and/or stalking.

274. At all times relevant hereto, California Labor Code §§ 230 and 230.1 were in full force and effect, and were binding upon DEFENDANTS and DOES 1-20.

275. In violation of California Labor Code §§ 230 and 230.1, DEFENDANTS and DOES 1-20 discriminated against PLAINTIFF because: (a) she was a victim of domestic violence, sexual assault, and/or stalking; and (b) she required time off from work to attend to injuries resulting therefrom, obtain services and psychological counseling related thereto, and/or take action to increase her safety in protection therefrom.

276. Additionally, DEFENDANTS failed to reasonably accommodate and/or engage in a timely, good faith, and interactive process with PLAINTIFF when she requested accommodation for her safety while at work as a result of the domestic violence, sexual assault and/or stalking she had suffered.

277. Pursuant to Labor Code § 230(g), PLAINTIFF is ". . . entitled to . . . reimbursement for lost wages and work benefits caused by the acts of the employer."

278. Additionally, the damage allegations of Paragraphs 43 through 45 inclusive, are herein incorporated by reference.

279. As a result of her status as a domestic violence, sexual assault and/or stalking victim, of her need to take time off to attend to matters related to this protected status, and her requests for DEFENDANTS to protect her while at work, DEFENDANTS alienated her, created a hostile work environment, terminated her, and other such adverse employment actions.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 8
-44-
COMPLAINT
Page 95

280.   Said conduct violates the California Labor Code §§ 230 and 230.1, and such violations were a proximate cause in PLAINTIFF's damage as stated below.

281.   As a direct and proximate result of DEFENDANTS' unlawful conduct, PLAINTIFF has suffered and continues to suffer general and special, economic and non-economic damages in an amount to be proven at trial.

282.   The foregoing conduct of DEFENDANTS individually, or by and through their managing agents, was intended by DEFENDANTS to cause injury to PLAINTIFF or was despicable conduct carried on by DEFENDANTS with a willful and conscious disregard of the rights of PLAINTIFF or subjected PLAINTIFF to cruel and unjust hardship in conscious disregard of PLAINTIFF's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, such as to constitute malice, oppression, or fraud under Civil Code § 3294, thereby entitling PLAINTIFF to punitive damages in an amount appropriate to punish or make an example of DEFENDANTS.

## NINETEENTH CAUSE OF ACTION

### Retaliation Against Victims of Domestic Violence – Labor Code § 230

### (As to PETSMART, and DOES 1 through 20)

283.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

284.   At all times hereto, Labor Code §230(c) was in full force and effect and was binding upon DEFENDANTS and each of them, and prohibits an employer from discharging or in any manner discriminating or retaliating against an employee who is a victim of domestic violence, sexual assault, or stalking for taking time off from work to obtain or attempt to obtain any relief, including, but not limited to, a temporary restraining order, restraining order, or other injunctive relief, to help ensure the health, safety, or welfare of the victim or his or her child.

285.   At all times hereto, Labor Code § 230(e) was in full force and effect and was binding upon DEFENDANTS and each of them, and prohibits an employer from discharging or in any manner discriminating or retaliating against an employee because of the employee's status as a victim of domestic violence or stalking, if the victim provides notice to the employer of the status or the

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1   employer has actual knowledge of the status.

2       286.    At all times hereto, Labor Code §230(f)(8) was in full force and effect and was binding

3   upon DEFENDANTS and each of them, and prohibits an employer from retaliating against a victim

4   of domestic violence, sexual assault, or stalking for requesting a reasonable accommodation,

5   regardless of whether the request was granted.

6       287.    DEFENDANTS violated Labor Code §230(c) because they discharged, discriminated

7   and/or retaliated against PLAINTIFF, a victim of domestic violence or stalking, for taking time off

8   from work to obtain or attempt to obtain any relief, to help ensure PLAINTIFF's health, safety, or

9   welfare.

10       288.    DEFENDANTS violated Labor Code §230(e) because they discharged, discriminated

11   and/or retaliated against PLAINTIFF, because of PLAINTIFF's status as a victim of domestic

12   violence or stalking, and PLAINTIFF had provided notice to the employer of the status and the

13   employer has actual knowledge of the status.

14       289.    DEFENDANTS violated Labor Code §230(f)(8) because they retaliated against

15   PLAINTIFF for requesting reasonable accommodations for her safety from domestic violence while

16   at work.

17       290.    At all times relevant hereto, PLAINTIFF was performing competently in the position

18   PLAINTIFF held with DEFENDANTS.

19       291.    PLAINTIFF suffered the adverse employment actions of failure to accommodate and

20   termination, and was harmed thereby.

21       292.    PLAINTIFF is informed, believes, and thereon alleges that PLAINTIFF's status as a

22   victim of domestic violence and taking time off from work in an attempt to secure her safety with

23   respect thereto, were motivating reasons and/or factors in the decisions to subject her to the

24   aforementioned adverse employment actions.

25       293.    Said conduct violates the Labor Code §230(c), (3) and/or (f)(8), and such violations

26   were a proximate cause in PLAINTIFF's damages as stated below.

27       294.    The damage allegations of Paragraphs 43 through 45 inclusive, are herein incorporated

28   by reference.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

295.   The foregoing conduct of DEFENDANTS individually, or by and through their officers, directors and/or managing agents, was intended by DEFENDANTS to cause injury to PLAINTIFF or was despicable conduct carried on by DEFENDANTS with a willful and conscious disregard of the rights of PLAINTIFF or subjected PLAINTIFF to cruel and unjust hardship in conscious disregard of PLAINTIFF's rights such as to constitute malice, oppression, or fraud under Civil Code § 3294, thereby entitling PLAINTIFF to punitive damages in an amount appropriate to punish or make an example of DEFENDANTS.

## TWENTIETH CAUSE OF ACTION

### Failure to Provide Reasonable Accommodations in Violation of Labor Code § 230

### (As to PETSMART, and DOES 1 through 20)

296.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

297.   At all times hereto, Labor Code § 230(f)(1) was in full force and effect and was binding upon DEFENDANTS and each of them. This subsection imposes an ongoing duty on DEFENDANTS to provide reasonable accommodations for a victim of domestic violence, sexual assault, or stalking who requests an accommodation for the safety of the victim while at work, which may include the implementation of safety measures, including a transfer, reassignment, modified schedule, changed work telephone, changed work station, installed lock, assistance in documenting domestic violence, sexual assault, or stalking that occurs in the workplace, an implemented safety procedure, or another adjustment to a job structure, workplace facility, or work requirement in response to domestic violence, sexual assault, or stalking, or referral to a victim assistance organization.

298.   DEFENDANTS violated Labor Code §230(f)(1) because they failed to provide reasonable accommodations for PLAINTIFF, a victim of domestic violence or stalking who had requested an accommodation for her safety related to her employment with DEFENDANTS.

299.   At all times herein, PLAINTIFF was willing and able to perform the duties and functions of the position in which PLAINTIFF was employed, or could have performed the duties and functions of that position with reasonable accommodations for her safety and healing while at

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1  work. Accommodation of PLAINTIFF's safety and healing from domestic violence would not have

2  imposed an undue hardship on DEFENDANTS. DEFENDANTS failed and refused to accommodate

3  PLAINTIFF's need for recuperation and safety, and instead terminated her on the false pretense of

4  "job abandonment," or in other words, that PLAINTIFF had already been accommodated and

5  DEFENDANTS were no longer willing to do so.

6     300.    The above said acts of DEFENDANTS constitute violations of Labor Code §230(f)(1)

7  and were a proximate cause in PLAINTIFF's damage as stated below.

8     301.    The damage allegations of Paragraphs 43 through 45, inclusive, are herein

9  incorporated by reference.

10    302.    The foregoing conduct of DEFENDANTS individually, and/or by and through their

11 officers, directors, and/or managing agents, was intended by DEFENDANTS to cause injury to

12 PLAINTIFF or was despicable conduct carried on by DEFENDANTS with a willful and conscious

13 disregard of the rights of PLAINTIFF or subjected PLAINTIFF to cruel and unjust hardship in

14 conscious disregard of PLAINTIFF's rights such as to constitute malice, oppression, or fraud under

15 Civil Code § 3294, thereby entitling PLAINTIFF to punitive damages in an amount appropriate to

16 punish or make an example of DEFENDANTS.

17               **TWENTY-FIRST CAUSE OF ACTION**

18 **Failure to Engage in a Good Faith Interactive Process in Violation of Labor Code § 230**

19               **(As to PETSMART, and DOES 1 through 20)**

20    303.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every

21 preceding and subsequent paragraph as though fully set forth herein.

22    304.    At all times hereto, Labor Code §230(f)(4) was in full force and effect and was binding

23 upon DEFENDANTS. This subsection imposes an ongoing duty on DEFENDANTS to engage in a

24 timely, good faith, interactive process with the employee to determine effective reasonable

25 accommodations, if any, in response to a request for reasonable accommodation by a domestic

26 violence victim to secure her safety and well-being.

27    305.    DEFENDANTS violated Labor Code §230(f)(2) because they failed to engage in a

28 timely, good faith, and interactive process with PLAINTIFF to determine effective reasonable

EXHIBIT -48-
COMPLAINT
Page 99

1   accommodations for her safety while at work.

2       306.   PLAINTIFF reported her status as a domestic violence victim to DEFENDANTS and

3   requested an accommodation, triggering DEFENDANTS' obligation to engage in the interactive

4   process with PLAINTIFF, but at all times herein, DEFENDANTS failed and refused to do so. Instead,

5   DEFENDANTS, through the actions of JEN, the Store Manager, callously presented PLAINTIFF

6   with an ultimatum that starkly contradicted their previous assurances and legal obligations: resume

7   work immediately or face job termination. This insensitive and unjust demand, made in blatant

8   disregard of PLAINTIFF's vulnerable situation and her rights as a domestic abuse survivor, ultimately

9   led to her wrongful termination, exemplifying DEFENDANTS' lack of empathy and failure to

10   accommodate her legitimate needs. As such, DEFENDANTS systematically marginalized and

11   disregarded PLAINTIFF, demonstrating a lack of empathy and a disregard for her wellbeing.

12       307.   The above said acts of DEFENDANTS constitute violations of the Labor Code

13   §230(f)(4), and were a proximate cause in PLAINTIFF's damage as stated below.

14       308.   The damage allegations of Paragraphs 43 through 45, inclusive, are herein

15   incorporated by reference.

16       309.   As a result of DEFENDANTS' actions, pursuant to Labor Code §230(g)(1)-(2),

17   PLAINTIFF is entitled to reinstatement and reimbursement for lost wages and work benefits caused

18   by the acts of DEFENDANTS, as well as appropriate equitable relief.

19       310.   The foregoing conduct of DEFENDANTS individually, and/or by and through their

20   officers, directors, and/or managing agents, was intended by DEFENDANTS to cause injury to

21   PLAINTIFF or was despicable conduct carried on by DEFENDANTS with a willful and conscious

22   disregard of the rights of PLAINTIFF or subjected PLAINTIFF to cruel and unjust hardship in

23   conscious disregard of PLAINTIFF's rights such as to constitute malice, oppression, or fraud under

24   Civil Code § 3294, thereby entitling PLAINTIFF to punitive damages in an amount appropriate to

25   punish or make an example of DEFENDANTS.

26   / / /

27   / / /

28   / / /

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

-49-
COMPLAINT

EXHIBIT C
Page 100

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

**TWENTY-SECOND CAUSE OF ACTION**

**Retaliation Against Victims of Domestic Violence – Labor Code § 230.1**

**(As to PETSMART, and DOES 1 through 20)**

311.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

312.    Labor Code §230.1(a) prohibits employers with 25 or more employees from discharging or discriminating or retaliating against an employee who is a victim of domestic violence, sexual assault, or stalking for taking time off from work for purposes of, among other things, participating in safety planning and take other actions to increase safety from future domestic violence, sexual assault, or stalking, including temporary or permanent relocation.

313.    DEFENDANTS violated Labor Code §230.1(a)(4) because they discharged, discriminated and/or retaliated against PLAINTIFF, a victim of domestic violence or stalking, for taking time off from work to take actions to increase safety from future domestic violence, sexual assault, or stalking, including temporary or permanent relocation.

314.    The damage allegations of Paragraphs 43 through 45, inclusive, are herein incorporated by reference.

315.    As a result of DEFENDANTS' actions, pursuant to Labor Code §230.1(c), PLAINTIFF is entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of DEFENDANTS, as well as appropriate equitable relief.

316.    Because the acts taken toward PLAINTIFF were carried out by managerial employees acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of PLAINTIFF's rights and in order to injure and damage PLAINTIFF, PLAINTIFF requests that punitive damages be levied against DEFENDANTS and each of them, in sums in excess of the jurisdictional minimum of this court.

/ / /

/ / /

/ / /

/ / /

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

**TWENTY-THIRD CAUSE OF ACTION**

**Failure to Provide Meal Periods in Violation of Labor Code § 512**

**(As to PETSMART, and DOES 1 through 20)**

317.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

318.    Labor Code § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate Wage Orders of the Industrial Welfare Commission ("Wage Order").

319.    Labor Code § 512 and § 11 of the Wage Order require employers to provide non-exempt employees who work five or more hours in a workday with a first uninterrupted off duty meal period of at least thirty minutes before the end of the employee's fifth hour of work, and further require employers to provide a second uninterrupted off-duty meal period for employees who work more than ten hours in a workday.

320.    Labor Code § 226.7 and § 11 of the Wage Order require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a meal period in accordance with the Wage Order.

321.    At all relevant times, PLAINTIFF was employed by DEFENDANTS as a non-exempt employee, as defined by California Labor Code and Industrial Welfare Commission Wage Orders.

322.    Notwithstanding the aforementioned legal obligations, DEFENDANTS systematically, willfully, and knowingly violated these legal requirements by compelling PLAINTIFF to work in excess of five hours daily without providing her the opportunity to partake in an uninterrupted 30-minute meal break. As a consequence, PLAINTIFF was deprived of her statutory rights and entitlements under Labor Code §§ 512, 226.7, 1198, and Wage Order 5.

323.    To further exacerbate the situation, DEFENDANTS failed to compensate PLAINTIFF with an additional hour of premium wages at her regular rate of compensation for each workday wherein she was not provided with a meal period in accordance with the Wage Order, as dictated by Labor Code § 226.7 and § 11 of the Wage Order.

324.   In direct contravention of PLAINTIFF's rights, DEFENDANTS consciously disregarded their statutory duty, leading to PLAINTIFF working excessive hours under challenging conditions, without the requisite meal breaks and without receiving due compensation for these missed meal periods. This oppressive labor practice constitutes a flagrant breach of DEFENDANTS' legal obligations under Labor Code §§ 512, 226.7, and 1198, and Wage Order 5.

325.   As a direct and proximate result of DEFENDANTS' unlawful conduct, PLAINTIFF has suffered and continues to suffer substantial losses in earnings and other benefits of employment. In accordance with Labor Code § 226.7 and § 11 of the Wage Order, PLAINTIFF is entitled to recover premium wages for each workday in which a meal period was not provided in accordance with the applicable Wage Order.

326.   In addition to economic damages, PLAINTIFF has also suffered significant emotional distress, humiliation, embarrassment, and mental and physical pain and suffering as a result of DEFENDANTS' illegal conduct, for which PLAINTIFF is entitled to recovery.

327.   Consequently, PLAINTIFF is owed one hour of pay at her regular hourly rate, or the requisite minimum wage, whichever is greater, for each day that she was denied such meal periods and is owed one hour of pay at her regular rate, or the requisite minimum wage, whichever is greater, for each day she was denied said meal periods. PLAINTIFF seeks all recoverable wages, penalties, liquidated damages, interest and attorney's fees as permitted under the law.

## **TWENTY-FOURTH CAUSE OF ACTION**

### **Failure to Provide Rest Breaks in Violation of Labor Code § 226.7**

### **(As to PETSMART, and DOES 1 through 20)**

328.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

329.   Labor Code § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate the Wage Order.

330.   § 12 of the Wage Order imposes an affirmative obligation on employers to permit and authorize their non-exempt employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major portion thereof, that must be in the middle

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

EXHIBIT 2
-52-
COMPLAINT
Page 103

of each work period insofar as practicable.

331.   Labor Code § 226.7 and § 12 of the Wage Order require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest period in accordance with the Wage Order.

332.   At all times herein mentioned, DEFENDANTS were and still are obligated under the provisions of California Labor Code § 1198 and § 12 of the Industrial Welfare Commission's Wage Order, to authorize and permit all of its non-exempt employees, including PLAINTIFF, to take rest periods of not less than ten minutes for each four hours of work or major fraction thereof, insofar as practicable, in the middle of each such work period.

333.   As documented in detail herein, DEFENDANTS have clearly violated these obligations by systematically failing to authorize and permit PLAINTIFF to take her legally mandated rest periods.

334.   Throughout PLAINTIFF's employment, DEFENDANTS chronically failed to authorize and permit PLAINTIFF to take requisite rest breaks, a situation exacerbated by the high demand for grooming services where PLAINTIFF and other stylists were consistently asked to work during their rest periods in order to meet customer demands.

335.   DEFENDANTS acted with conscious disregard for the rights and well-being of PLAINTIFF, thereby engaging in oppressive, fraudulent, and malicious conduct. As such, PLAINTIFF is entitled to seek and recover punitive damages against DEFENDANTS.

336.   Despite their explicit obligations under the law, DEFENDANTS demonstrated an ongoing and willful disregard for these requirements by failing to authorize or permit PLAINTIFF to take the rest periods mandated by California law, thereby causing PLAINTIFF to suffer significant harm and loss.

337.   By reason of DEFENDANTS' unlawful actions, PLAINTIFF is entitled to recover an additional hour of pay at her regular rate for each workday that DEFENDANTS failed to provide a rest period in accordance with the Wage Order and Labor Code § 226.7.

338.   Consequently, PLAINTIFF is owed one hour of pay at her regular hourly rate, or the requisite minimum wage, whichever is greater, for each day that she was denied such rest breaks and

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

is owed one hour of pay at her regular rate, or the requisite minimum wage, whichever is greater, for each day she was denied said rest breaks. PLAINTIFF seeks all recoverable wages, penalties, liquidated damages, interest and attorney's fees as permitted under the law.

### TWENTY-FIFTH CAUSE OF ACTION

**Failure to Pay Overtime Wages Pursuant to Labor Code §§ 510, 558.1 and 1194**

**(As to all DEFENDANTS)**

339.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

340.   DEFENDANTS were PLAINTIFF's legal employer at all times relevant herein; and PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

341.   At all relevant times hereto, PLAINTIFF was a non-exempt employee of DEFENDANTS, and thereby entitled to all benefits and privileges of non-exempt employees under California law, including, but not limited to overtime pay and double time pay.

342.   Labor Code § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate the applicable Wage Order.

343.   Section 2(G) of the Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, [which]includes all the time the employee is suffered or permitted to work, whether or not required to do so."

344.   Labor Code §§ 510 and 1194, and the Wage Order, require employers to pay overtime wages to their non-exempt employees at no less than one and one-half (1.5) times their regular rates of pay for all hours worked in excess of eight (8) hours in one workday, all hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on a seventh consecutive workday.

345.   Labor Code §§ 510 and 1194, and the Wage Order also require employers to pay overtime wages to their non-exempt employees at no less than two (2) times their regular rates of pay for all hours worked in excess of twelve (12) hours in one workday, and for all hours worked in excess of eight (8) hours on a seventh consecutive workday.

346.   At all relevant times, PLAINTIFF worked over eight (8) hours a day.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 3
-54-
COMPLAINT
Page 105

347. Throughout PLAINTIFF's employment, DEFENDANTS regularly forced PLAINTIFF to work through her meal and rest breaks. Despite working through her meal and rest breaks, DEFENDANTS failed to properly record and pay PLAINTIFF her earned wages, including overtime. By requiring PLAINTIFF to perform work off the clock, and failing to record such time, DEFENDANTS failed to accurately record the total amount of hours worked for the day, which included failing to accurately record PLAINTIFF's overtime hours.

348. Additionally, after DEFENDANTS wrongfully misclassified PLAINTIFF as an exempt employee, DEFENDANTS failed to record PLAINTIFF's hours, including her overtime hours. Moreover, DEFENDANTS failed to pay PLAINTIFF in accordance with her hours worked but only pay PLAINTIFF an insufficient salary which did not accurately equal the amount of hours, including overtime hours, PLAINTIFF actually worked.

349. As such, DEFENDANTS failed to properly pay PLAINTIFF her earned overtime.

350. Labor Code § 558.1 provides that any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hour and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

351. As stated herein, JEN willfully and intentionally acted to deny PLAINTIFF her overtime wages, minimum wages, premium pay, and waiting time.

352. Pursuant to Labor Code § 1194, PLAINTIFF seeks recovery of all unpaid overtime and/or double time wages, interest thereon, liquidated damages in an amount equal to the amount of unpaid wages, costs of suit, and reasonable attorneys' fees, all in the amounts subject to proof.

## TWENTY-SIXTH CAUSE OF ACTION

**Failure to Pay Minimum Wages Pursuant to Labor Code §§ 558.1 1194, 1194.2, and § 1197**

**(As to all DEFENDANTS)**

353. PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

354. DEFENDANTS were PLAINTIFF's legal employer at all times relevant herein; and

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 5
-55-
COMPLAINT
Page 106

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

355.   At all relevant times, PLAINTIFF was a non-exempt employee of DEFENDANTS and entitled to the full protections of the Labor Code and of the Wage Order.

356.   Labor Code § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate the Wage Order.

357.   Section 2(G) of the Wage Order defines "hours worked" and "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so."

358.   Labor Code §§ 1194 and 1197, and § 4 of the Wage order require employers to pay non-exempt employees at least minimum wage for each hour worked.

359.   At all relevant times during her employment, DEFENDANTS failed to pay PLAINTIFF at least minimum wage for each hour worked. Specifically, PLAINTIFF was forced to perform work while she was on her meal breaks in addition to working through her rest breaks. At no time was PLAINTIFF ever compensated for these hours.

360.   Labor Code § 558.1 provides that any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hour and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

361.   As stated herein, JEN willfully and intentionally acted to deny PLAINTIFF her overtime wages, minimum wages, premium pay, and waiting time.

362.   Pursuant to Labor Code §§ 1194 and 1194.2, PLAINTIFF seeks recovery of all unpaid minimum wages, interest thereon, liquidated damages in an amount equal to the amount of unpaid minimum wages, costs of suit, and reasonable attorney's fees, all in amounts subject to proof.

/ / /

/ / /

/ / /

/ / /

EXHIBIT -56-
COMPLAINT
Page 107

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

### TWENTY- SEVENTH CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements in Violation of Labor Code §§ 226 and 558.1**

**(As to all DEFENDANTS)**

363. PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

364. DEFENDANTS were PLAINTIFF's legal employer at all times relevant herein; and PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

365. California *Labor Code* § 226(a) requires DEFENDANTS to accurately itemize in wage statements all deductions from payment of wages, gross wages earned, and benefits accrued by PLAINTIFF.

366. DEFENDANTS knowingly and intentionally failed to comply with Labor Code § 226(a) by failing to provide proper wage statements to PLAINTIFF. For example, PLAINTIFF's wage statements failed to accurately record PLAINTIFF's total time worked, total wages-including overtime wages and earned commissions.

367. By failing to keep adequate records as required by § 226 of the Labor Code, DEFENDANTS have injured PLAINTIFF.

368. DEFENDANTS' failure to comply with the Labor Code is unlawful pursuant to *Labor Code* § 1175 and similar IWC Wage Orders.

369. As a result of these knowing and intentional failures to comply with these Labor Code requirements, and PLAINTIFF's injuries, PLAINTIFF is entitled to recover the greater of all actual damages for fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty for four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

370. Labor Code § 558.1 provides that any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hour and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for

1   such violation.

2       371.   As stated above, JEN willfully and intentionally acted to deny PLAINTIFF her

3   overtime wages, minimum wages, premium pay, and waiting time, thus causing PLAINTIFF to

4   receive inaccurate wage statements in violation of Labor Code § 226.

5                       **TWENTY-EIGHTH CAUSE OF ACTION**

6       **Waiting Time Penalties Pursuant to Labor Code §§ 201, 203, and 558.1**

7                   **(As to all DEFENDANTS and DOES 1 through 20)**

8       372.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every

9   preceding and subsequent paragraph as though fully set forth herein.

10      373.   DEFENDANTS were PLAINTIFF's legal employer at all times relevant herein; and

11  PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

12      374.   Labor Code § 201 requires employers to immediately pay all earned and unpaid wages

13  to discharged employees at the time of discharge.

14      375.   PLAINTIFF is no longer employed by DEFENDANTS. DEFENDANTS failed to pay

15  PLAINTIFF all her earned wages immediately at the time of her wrongful termination.

16      376.   DEFENDANTS' failure to pay wages and all owed benefits, as alleged above, was

17  willful in that DEFENDANTS knew wages and benefits were due but failed to pay them, thus

18  entitling PLAINTIFF to penalties under Labor Code § 203, providing that an employee's wages shall

19  continue as a penalty until paid for a period of up to thirty (30) days from the time they were due.

20      377.   PLAINTIFF also seeks interest thereon, liquidated damages in an amount equal to the

21  amount of unpaid minimum wages, costs of suit, and attorney's fees, all in amounts subject to proof.

22      378.   Labor Code § 558.1 provides that any employer or other person acting on behalf of an

23  employer, who violates, or causes to be violated, any provision regulating minimum wages or hour

24  and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be

25  violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for

26  such violation.

27      379.   As stated above, JEN willfully and intentionally acted to deny PLAINTIFF her

28  overtime wages, minimum wages, premium pay, and waiting time pay.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

-58-
COMPLAINT

EXHIBIT 7
Page 109

**TWENTY-NINTH CAUSE OF ACTION**

**Unlawful, Unfair, and Fraudulent Business Practices – Bus. & Prof. Code §§ 17200, et seq**

**(As to PETSMART, and DOES 1 through 20)**

380.   PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

381.   Under the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, California law prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice." This cause of action is a claim under the UCL for disgorgement of DEFENDANTS profits obtained through their illegal violations, for restitution to PLAINTIFF, and for injunctive relief.

382.   DEFENDANTS, throughout their course of conduct as described in the preceding paragraphs, have committed unlawful, unfair, and fraudulent business practices within the meaning of Business and Professions Code § 17200 et seq. These practices include, but are not limited to, violating California Labor Laws, which are codified within the Labor Code and are deemed as "borrowed violations" under the UCL.

383.   DEFENDANTS, through their willful conduct, engaged in practices that blatantly violate public policy, as established under § 17200 of the UCL, which prohibits engaging in an "unlawful, unfair, or fraudulent business act or practice." Such practices include but are not limited to, discrimination and retaliation against PLAINTIFF due to her status as a domestic violence survivor and individual with disabilities, systemic compulsion to forfeit meal and rest breaks, failure to ensure a safe working environment, failure to pay earned commissions, and the wrongful termination of PLAINTIFF's position under false pretenses. These actions stand as a stark deviation from established public policy and norms in the state of California and constitute unlawful business practices under the UCL.

384.   DEFENDANTS, given their position and knowledge of labor laws, working conditions, and basic human rights, knew or should have known that their conduct was in violation of public policy. DEFENDANTS' intentional acts of neglect, discrimination, retaliation, and wrongful termination establish a clear pattern of an unfair business practice that harmed PLAINTIFF.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

EXHIBIT 8
-59-
COMPLAINT
Page 110

385.   DEFENDANTS' unlawful actions inflicted grave harm on PLAINTIFF. Specifically, DEFENDANTS repeatedly ignored PLAINTIFF's numerous workplace injuries, dismissing them as mere occupational hazards and failing to provide a safe working environment. Furthermore, DEFENDANTS systematically forced PLAINTIFF to skip mandated meal and rest breaks and underpaid her rightful commissions, showcasing their utter disrespect for her contractual and financial entitlements. During a time of immense personal turmoil, including a distressing divorce and domestic abuse, PLAINTIFF's vulnerability was exploited by DEFENDANTS, who not only ignored her psychological trauma but also wrongfully terminated her employment under the pretext of job abandonment. This heartless decision, made while PLAINTIFF was courageously undergoing rehabilitation for domestic violence, was compounded by DEFENDANTS' subsequent actions that blocked her employment opportunities elsewhere, marking them with a 'non-rehirable' status. These cumulative actions by DEFENDANTS, rife with discrimination, harassment, and retaliation, have inflicted profound emotional distress, physical ailments, and financial hardship on PLAINTIFF. DEFENDANTS' actions are demonstrative of their conscious disregard for the laws and public policies protecting employee rights in California.

386.   Moreover, DEFENDANTS' unjust enrichment at the expense of PLAINTIFF, by wrongfully appropriating her PTO hours and earned commissions for their own financial gain, is a flagrant example of fraudulent business practices, which further entrenches DEFENDANTS' violation of the UCL. As such, DEFENDANTS' refusal to provide PLAINTIFF with reasonable accommodations for her disability, as well as their retaliatory actions against PLAINTIFF following her request for such accommodations, further constitute violations of California Government Code § 12940 et seq. These violations, given their commercial context, also constitute "unlawful" business practices under Business and Professions Code § 17200.

387.   As a result of DEFENDANTS' unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code § 17200, DEFENDANTS have illegally profited at PLAINTIFF's expense. Consequently, PLAINTIFF seeks all available reimbursement, statutory damages and penalties, injunctive relief, and any other relief as the Court deems just and proper, including but not limited to, attorney's fees, costs, and interest, to be determined at the time of trial.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

**THIRTIETH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(As to all DEFENDANTS)**

388. PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

389. DEFENDANTS was PLAINTIFF's legal employer at all times relevant herein; and PLAINTIFF was an employee of DEFENDANTS at all times relevant herein.

390. The conduct of DEFENDANTS, specifically the actions orchestrated and executed by managing agents like JEN were egregiously outrageous, exceeding all bounds tolerated in a civilized society. Despite PLAINTIFF's exemplary 16-year tenure, unwavering dedication, and significant personal challenges, including a distressing domestic abuse situation, DEFENDANTS, led by JEN, executed a scheme culminating in PLAINTIFF's wrongful termination and subsequent denial of employment opportunities. Such actions, particularly the abrupt termination while PLAINTIFF was undergoing rehabilitation for domestic violence-related trauma and the premeditated thwarting of her employment prospects at PETSMART Store #1092, demonstrate an unparalleled level of callousness and cruelty.

391. DEFENDANTS, through managing agents like JEN, acted with either a malicious intent to cause emotional distress or, at the very least, with reckless disregard for the high probability of such distress occurring. This is evidenced by the heartless manner in which PLAINTIFF's termination was handled and the subsequent orchestrated effort to block her employment at another location, despite her exceptional record and the initial welcoming stance of PETSMART Store #1092. Such actions were not mere negligence but a deliberate and calculated attempt to undermine PLAINTIFF's professional and personal well-being.

392. As a direct result of DEFENDANTS' actions, PLAINTIFF suffered severe emotional distress. This distress is characterized by intensified depression, anxiety, and a profound mental and emotional toll, exacerbating her already vulnerable state due to her personal circumstances. The abrupt loss of employment and subsequent denial of a lifeline at another store magnified PLAINTIFF's suffering, leaving her in a state of shock, horror, and disbelief.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

393.    DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's severe emotional distress. The correlation between DEFENDANTS' actions and PLAINTIFF's deteriorating mental health is undeniable. The timing of these events, their intensity, and the direct impact they had on PLAINTIFF's life establish a clear causal link between DEFENDANTS' conduct and the emotional distress suffered by PLAINTIFF.

394.    As a result of DEFENDANTS' unlawful conduct, PLAINTIFF suffered and will continue to suffer economic loss or disadvantage and emotional distress, including but not limited to, fatigue, depression, a general decline in health, sustained and prolonged pain and suffering, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. PLAINTIFF is accordingly entitled to exemplary, general and compensatory damages and attorney's fees in amounts to be proven at trial.

395.    PLAINTIFF seeks an award of general damages, special damages, exemplary damages, costs and damages in excess of the jurisdictional minimum of this court.

## THIRTIETH-FIRST CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (As to all DEFENDANTS)

396.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

397.    DEFENDANTS engaged in negligent and careless conduct as alleged in this Complaint, to PLAINTIFF's detriment.

398.    The conduct of DEFENDANTS, specifically through the actions of managing agents such as JEN and HR, was negligent, breaching the duty of care owed to PLAINTIFF. DEFENDANTS, being fully aware of PLAINTIFF's personal circumstances, including her status as a victim of domestic violence and her need for mental health rehabilitation, had a legal and moral obligation to act with reasonable care towards PLAINTIFF. This duty was egregiously breached when DEFENDANTS, particularly JEN, threatened termination for job abandonment and later executed it, despite PLAINTIFF's approved leave and legitimate need for an extension.

399.    PLAINTIFF suffered serious emotional distress as a direct consequence of

EXHIBIT -62-
COMPLAINT
Page 113

DEFENDANTS' negligent conduct. This distress is evidenced by PLAINTIFF's profound depression, anxiety, physical illness, and emotional trauma, which were significantly exacerbated by DEFENDANTS' actions. The abrupt and unjustified termination, following a prolonged period of dedicated service and in the midst of PLAINTIFF's recovery from domestic abuse, undoubtedly caused severe psychological harm to PLAINTIFF. This level of distress surpasses what an ordinary, reasonable person would be able to cope with.

400. DEFENDANTS, and each of them, knew or should have known that such conduct would cause direct and immediate emotional harm to PLAINTIFF, and they so negligently ran the employment environment that it did in fact cause PLAINTIFF such harm.

401. The negligent actions of DEFENDANTS were a substantial factor in causing PLAINTIFF's serious emotional distress. The abrupt withdrawal of employment, the betrayal of trust by JEN, and the subsequent inability to secure employment at another PETSMART location, all directly resulted from DEFENDANTS' negligent handling of PLAINTIFF's situation. These actions not only disregarded PLAINTIFF's rights as an employee and a victim of domestic violence but also directly led to the deterioration of her mental health and financial stability.

402. DEFENDANTS' actions and inactions, rooted in negligence, have caused PLAINTIFF substantial and serious emotional distress, which an ordinary, reasonable person would be unable to endure. As a result of DEFENDANTS' unlawful conduct, PLAINTIFF suffered and will continue to suffer economic loss or disadvantage and emotional distress, including but not limited to, fatigue, depression, a general decline in health, sustained and prolonged pain and suffering, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. PLAINTIFF, therefore, seeks relief and damages as provided by law, including but not limited to compensation for emotional distress, pain and suffering, medical expenses, loss of wages and benefits, and any other relief the Court deems just and proper. PLAINTIFF is accordingly entitled to exemplary, general and compensatory damages and attorney's fees in amounts to be proven at trial.

403. PLAINTIFF seeks an award of general damages, special damages, exemplary damages, costs and damages in excess of the jurisdictional minimum of this Court.

///

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, PLAINTIFF prays for relief against DEFENDANTS, and each of them, jointly and severally as follows:

1.    For general, compensatory, special, exemplary and punitive damages according to proof, on each cause of action for which such damages are available;

2.    For reasonable attorneys' fees, according to proof on each cause of action for which such damages are available;

3.    For prejudgment and post-judgment interest (at the prevailing legal rate) pursuant to California Civil Code § 3287 and/or California Civil Code § 3288 and/or any other provision of law providing for interest for which such damages are available;

4.    For all statutory penalties provided under the Labor Code, including without limitation, §§ 1102.5, 1174.5, and 1198.5; and for attorney's fees, costs, penalties and injunctive relief as provided under Labor Code § 226, et seq;

5.    Economic, personal injury and emotional distress damages including loss of earnings, bonuses, commissions, deferred compensation, and other employment benefits, lost future earnings, a blot on PLAINTIFF's employment history, lack of references, and other consequential damages in an amount that exceeds $1,000,000;

6.    For all recoverable penalties according to law and for all costs of suit herein incurred;

7.    For penalties under the California Government Code for any such violations;

8.    For total damages in the amount of $10,000,000.00; and

9.    For such other and further relief as the Court deems just and proper.

DATED:  February 9, 2024                          **VALIANT LAW**

By: _____
                  KAMRAN SHAHABI
                  TIKRAN BABAYAN
                  Attorneys For PLAINTIFF, KRISTIAN
                  ANNETTE VANDIVER aka "KRISTIAN
                  ANNETE BUNCH"

EXHIBIT -64-
COMPLAINT
Page 115

## REQUEST FOR JURY TRIAL

PLAINTIFF hereby requests a jury trial in accordance with the Court's rules and procedures.

DATED:  February 9, 2024                    **VALIANT LAW**

By: _____

KAMRAN SHAHABI
TIKRAN BABAYAN
Attorneys For PLAINTIFF, KRISTIAN
ANNETTE VANDIVER aka "KRISTIAN
ANNETE BUNCH"

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

# EXHIBIT A

EXHIBIT 8
Page 117

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 8, 2024

Kamran Shahabi
800 Ferrari Ln;, Suite 100
Ontario, CA 91764

RE:     **Notice to Complainant's Attorney**
         CRD Matter Number: 202402-23560008
         Right to Sue: Bunch / PetSmart, LLC et al.

Dear Kamran Shahabi:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

EXHIBIT 8
Page 118

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 8, 2024

RE:   **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202402-23560008
       Right to Sue: Bunch / PetSmart, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

EXHIBIT 8
Page 119

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 8, 2024

Kristian Bunch
800 Ferrari Ln;, Suite 100
Ontario, CA 91764

RE:   **Notice of Case Closure and Right to Sue**
      CRD Matter Number: 202402-23560008
      Right to Sue: Bunch / PetSmart, LLC et al.

Dear Kristian Bunch:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective February 8, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

CRD - ENF 80 RS (Revised 02/23)

EXHIBIT 8
Page 120



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

EXHIBIT 8
Page 121

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Kristian Bunch                                                    CRD No. 202402-23560008

                              Complainant,

vs.

PetSmart, LLC
12483 Limonite Ave
Eastvale, CA 91752

Jennifer Haeckel
,

                              Respondents

---

**1.** Respondent **PetSmart, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **Jennifer Haeckel** individual as Co-Respondent(s).

**3**. Complainant **Kristian Bunch**, resides in the City of **Ontario,** State of **CA.**

**4.** Complainant alleges that on or about **January 16, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant was discriminated against** because of complainant's association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result of the discrimination was terminated, denied any employment benefit or privilege, denied work opportunities or assignments, denied accommodation for a disability, denied employer paid

-1-
*Complaint – CRD No. 202402-23560008*

Date Filed: February 8, 2024

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8
Page 122

health care while on family care and medical leave (cfra), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was terminated, denied any employment benefit or privilege, denied work opportunities or assignments, denied accommodation for a disability, denied employer paid health care while on family care and medical leave (cfra), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Additional Complaint Details:** RESPONDANTS operate in the retail and pet service industry, with their relevant place of business located at 12483 Limonite Ave, Eastvale, CA 91752, which was at all relevant times COMPLAINTANT's legal employer and primary place of employment.

COMPLAINTANT is informed and believes, and thereon alleges, that RESPONDANTS PETSMART and JEN: (1) set COMPLAINTANT's wages, hours, or working conditions; (2) hired or terminated employees similar to COMPLAINTANT; (3) controlled COMPLAINTANT's work; (4) set or negotiated COMPLAINTANT's wages; (5) assigned or supervised COMPLAINTANT's work; (6) determined COMPLAINTANT's hours or conditions of employment; (7) set COMPLAINTANT's work schedules; and/or (8) supplied the instrumentalities, tools, or place of work for COMPLAINTANT.

As such, there is no dispute of material fact that RESPONDANTS were COMPLAINTANT's legal employers and managing agents of COMPLAINTANT's legal employers at all times relevant herein.

COMPLAINTANT began her employment with PETSMART in or around 2006, as a Professional Pet Stylist with unwavering loyalty and exceptional dedication. During the relevant time period discussed herein, COMPLAINTANT worked tirelessly under the direct supervision of JEN.

COMPLAINTANT's duties included but were not limited to grooming dogs, cleaning their teeth, and checking in clients. As such, for over sixteen (16) years, COMPLAINTANT was an exemplary employee, fighting for RESPONDANTS' bottom-line with grit and determination. COMPLAINTANT was often commended for being one of RESPONDANTS' "top stylists," for "always providing great customer service," for "always being available to groom an extra dog," and for being "a very important part of PETSMART's performance." COMPLAINTANT, a paragon of professionalism and a cornerstone of RESPONDANTS' commercial success, performed her duties with unparalleled excellence. Her role extended beyond grooming; she was a beacon of outstanding customer service and a critical contributor to PETSMART's performance, consistently exceeding the call of duty. COMPLAINTANT's adherence to the RESPONDANTS' high standards, policies, and procedures was unwavering, as reflected in stellar performance reviews and successive salary increments throughout her tenure, serving as a testament to her steadfast compliance

1   and professionalism. COMPLAINTANT's infectious enthusiasm and commitment were
    instrumental in fostering a loyal customer base, exemplifying her dedication to her chosen
2   vocation and her invaluable role within RESPONDANTS' operation.
3   Furthermore, COMPLAINTANT's status as an invaluable asset to RESPONDANTS'
    business operations and organizational success is also evidenced by the fact that
4   throughout the tenure of employment with RESPONDANTS, COMPLAINTANT completed
    nearly one hundred (100) rigorous training sessions offered and implemented by
5   RESPONDANTS. Aside from the numerous trainings COMPLAINTANT successfully
    completed that were designed for her specific position as a Professional Pet Stylist,
6   COMPLAINTANT also participated in trainings that would ensure customer satisfaction and
    service, and to ensure the general welfare of RESPONDANTS' business and safety of their
7   patrons.
8   During her enduring employment, COMPLAINTANT confided in RESPONDANTS about
    profoundly personal and distressing events in her life. She was embroiled in a tumultuous
9   and acrimonious divorce, necessitated by the grim reality of domestic abuse that included
    frequent violent encounters.
10  COMPLAINTANT's life was marred by persistent torment, harassment, and stalking by her
    then-spouse, even within the supposed sanctuary of her workplace, a distressing reality of
11  which RESPONDANTS were fully cognizant. COMPLAINTANT had no choice divulging
    these details to RESPONDANTS because as a result of her status as a victim of domestic
12  violence and abuse, COMPLAINTANT would from time-to-time need to take a day off to
    attend court proceedings related to her divorce, such as dissolution and injunctive relief
13  proceedings. Examples of such incidents include but are not limited to: (1) RESPONDANTS'
    compelling COMPLAINTANT to go lodge a police report as a result of her then-husband
14  pervasively stalking her while at work–which COMPLAINTANT did; and (2) a late-2022
    incident where COMPLAINTANT sought a protective order against her then-husband,
15  aiming to ensure the safety and welfare of her child and herself.
16  As detailed herein, these events resulted in COMPLAINTANT's subsequent need for
    accommodations.
17  The anxiety became so intense that in mid-December 2022, COMPLAINTANT requested
    time off work to deal with her deteriorating mental health, which included a stay and
18  recovery at a rehabilitation facility known for supporting victims of domestic violence. In light
    of RESPONDANTS' profound knowledge into the personal and sensitive details of
19  COMPLAINTANT's life, including her status as a victim of domestic violence,
    COMPLAINTANT felt comfortable disclosing to RESPONDANTS that her time-off from work
20  was going to be spent undergoing rehabilitation at a professional rehabilitation facility, and
    that she would have limited channels of communication while undergoing said treatments.
21  On or about December 16, 2022, COMPLAINTANT received confirmation from
    RESPONDANTS that her leave was approved from on or about December 19, 2022,
22  through on or about January 18, 2023. Confronted with the impending financial hardship this
    would impose on her and her child, COMPLAINTANT also pursued benefits through
23  California's State Disability Insurance (SDI), providing RESPONDANTS with all necessary
    documentation to substantiate her absence and claim for auxiliary support through SDI.
24  COMPLAINTANT, displaying remarkable fortitude, undertook a rigorous and emotionally
    taxing recovery at a renowned rehabilitation center for survivors of domestic violence.
25  Amidst this intense healing journey, COMPLAINTANT adhered to the center's strict

26                                    -3-
                        *Complaint – CRD No. 202402-23560008*
27
    Date Filed: February 8, 2024
28

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8
Page 124

1   protocols, including a challenging isolation period with restricted access to communication devices, all designed to foster mental well-being. Despite these constraints, COMPLAINTANT made commendable efforts to maintain contact with RESPONDANTS, providing updates through sporadic texts and calls as permitted.

3   While COMPLAINTANT's sanctioned medical leave was anticipated to conclude around January 18, 2023, her health necessitated a modest prolongation for complete recuperation. Consequently, on or about January 14, 2023, COMPLAINTANT prudently requested an extension through January 31, 2023, which RESPONDANTS promptly and explicitly approved via text message by her supervisor, Katy Wallace ("KATY").

6   In a subsequent phone conversation, COMPLAINTANT transparently communicated her ongoing participation in the rehabilitation program to KATY. In response, KATY empathetically assured COMPLAINTANT that her extended leave presented "no problem" and that RESPONDANTS were prepared to accommodate any post-treatment scheduling needs essential for her recovery from domestic abuse.

8   In a stark betrayal of trust and professional decency, less than two days after KATY's text message advising COMPLAINTANT that the minor extension to her leave request presented "no problem," during a call with COMPLAINTANT, JEN, the Store Manager, confronted COMPLAINTANT with a callous and legally indefensible ultimatum: resume work immediately or forfeit her job. Despite RESPONDANTS' approved extension and COMPLAINTANT's entitlement to accrued paid time off ("PTO") for leave extension, JEN threatened termination for job abandonment in defiance of COMPLAINTANT's rights, using "business needs" as a guise for what COMPLAINTANT firmly believes was retaliatory and discriminatory action linked to her status as a domestic abuse survivor and individual with disabilities.

14   In a heartfelt plea, COMPLAINTANT implored JEN to understand her circumstances, emphasizing that her treatment for trauma at the rehabilitation center for domestic violence survivors was nearing its conclusion, with a definitive end to her treatments anticipated by January 31, 2023. Despite this vulnerable disclosure, JEN's reaction was callously dismissive; responding with "consider yourself terminated" before abruptly hanging up on COMPLAINTANT, leaving her in a state of shock and disbelief.

17   In an attempt to seek clarity amidst this turmoil, COMPLAINTANT engaged GARZA, another supervisor, Nicholas Garza (hereinafter "GARZA"), who revealed that RESPONDANTS now deemed COMPLAINTANT a "liability" due to her personal life upheavals, exposing RESPONDANTS' neglectful and discriminatory stance that disregarded COMPLAINTANT's lengthy and loyal service of sixteen (16) years.

20   Despite RESPONDANTS' full awareness of the severe abuse that necessitated COMPLAINTANT's intensive mental health treatment, and their previous assurances of support upon her treatment completion and readiness to return to work, RESPONDANTS executed a duplicitous plot to wrongfully terminate her under the fabricated pretense of job abandonment.

22   As a result of their calculated and pretextual scheme, on or about January 16, 2023, brazenly contravening the legal and ethical obligations that govern employer-employee relationships, RESPONDANTS egregiously and unlawfully terminated COMPLAINTANT's employment, flagrantly violating COMPLAINTANT's employment rights, demonstrating a complete disregard for the principles of fairness, justice, and equitable treatment in the workplace.

-4-

*Complaint – CRD No. 202402-23560008*

Date Filed: February 8, 2024

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8
Page 125

The wrongful termination delivered a severe blow to COMPLAINTANT, exacerbating her depression and magnifying the overwhelming challenges she faced. RESPONDANTS, fully aware that COMPLAINTANT's State Disability Insurance (SDI) benefits were set to cease upon the conclusion of her rehabilitation and her anticipated return to the workforce, RESPONDANTS callously stripped her of her financial lifeline, rendering her and her children without any means of support in a time of acute vulnerability.

In a desperate effort to mitigate the harrowing consequences of RESPONDANTS' unjustifiable and illegal actions, COMPLAINTANT reached out to a different PETSMART store where she previously worked during her sixteen (16) year tenure—PETSMART, Chino Hills (Store #1092), at 13001 Peyton Drive, Chino Hills, CA 91709—and inquired into whether Store #1092 would offer COMPLAINTANT a position. Recognizing her stellar 16-year tenure and numerous commendations, the staff at PETSMART Store #1092 stated that they would "love to have her as part of the team" and that they absolutely had a position for COMPLAINTANT if she wanted to work at Store #1092, pending a standard reference check with her prior store managed by JEN.

In a shocking and unjust sequence of events, COMPLAINTANT was blindsided by a call from PETSMART Store #1092, merely a day after prior communications, informing her that, influenced by discussions with management at PETSMART in Eastvale—JEN's place of employment—PETSMART Store #1092 was abruptly withdrawing the employment offer to COMPLAINTANT.

RESPONDANTS' Human Resources Department (hereinafter "HR") also played a significant role in the construction of COMPLAINTANT's wrongful termination. Because of RESPONDANTS' unjustified termination of her employment and inability to retain employment at a different PETSMART store, COMPLAINTANT contacted RESPONDANTS' Human Resources ("HR") department for further clarity on why she was being forced out of her employment. This inquiry was a direct result of being unceremoniously ousted for a modest request for a leave extension, a request that came after sixteen (16) years of steadfast service and RESPONDANTS' inexplicable refusal to allocate any of COMPLAINTANT's accrued PTO towards this extension.

Astonishingly, HR not only confirmed that COMPLAINTANT was in fact terminated, COMPLAINTANT also discovered that she was unjustly branded as "non-rehirable," barring her from future employment opportunities within PETSMART. Egregiously, this decision was made while COMPLAINTANT was still receiving treatment at a rehabilitation facility for domestic violence survivors. When pressed for justification, RESPONDANTS' HR representative offered no substantial rationale, leaving COMPLAINTANT in the dark with a baseless and unexplained termination.

COMPLAINTANT was left in a state of horror and disbelief, especially after assurances from RESPONDANTS that her request for a scheduling change, necessary for her recovery from domestic violence, was granted. RESPONDANTS' sudden and inexplicable reversal—from approving her leave extension to the seemingly pretextual termination of her long-standing employment—was executed without providing any valid reason or documentation to substantiate such a draconian decision.

It is crucial to underscore that COMPLAINTANT's wrongful termination was not a consequence of job abandonment or any misconduct on COMPLAINTANT's part. The minor leave extension, which was initially approved only to be swiftly revoked, would not have burdened RESPONDANTS' operations in any conceivable manner. RESPONDANTS'

-5-

*Complaint – CRD No. 202402-23560008*

Date Filed: February 8, 2024

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8

Page 126

1   conduct was nothing less than a thinly veiled attempt to expel a committed, faithful
    employee whom they now perceived as a "liability."

2   Furthermore, over the course of more than sixteen (16) years of unwavering service to
    PETSMART, COMPLAINTANT endured a series of detrimental employment actions that

3   were unrelated to the aforementioned incidents.

4   During her tenure, COMPLAINTANT sustained multiple injuries from dog bites. Each and
    every one of COMPLAINTANT's disclosures of her on-the-job injuries was met with
    indifference by RESPONDANTS, dismissively attributing such injuries as an occupational

5   hazard and neglecting their duty to ensure a safe working environment.

6   Throughout the tenure of her employment with RESPONDANTS, COMPLAINTANT was
    systematically compelled to forfeit her meal and rest breaks. Due to the high demand of
    customers requiring grooming services for their dogs, COMPLAINTANT and other

7   Professional Pet Stylists were consistently asked to work during their rest breaks and to
    clock out for lunch before their 5th hour of work but continue working in order to meet

8   demands.

9   Throughout the tenure of her employment with RESPONDANTS, COMPLAINTANT was
    entitled to a 50% commission for every dog she groomed. (See, Exhibit "B" attached herein).

10  On average, COMPLAINTANT groomed 7-10 dogs per day, yet RESPONDANTS failed to
    compensate COMPLAINTANT for all of her earned commissions, reflecting

11  RESPONDANTS' blatant disregard for COMPLAINTANT's contractual and financial rights.

12  As a result of RESPONDANTS' multiple forms of discrimination, harassment, retaliation, and
    numerous Labor Code violations, COMPLAINTANT has suffered and will continue to suffer
    general and special damages, including severe and profound pain and emotional distress,

13  anxiety, depression, headaches, tension, and other physical ailments, as well as medical
    expenses, expenses for psychological counseling and treatment, and past and future lost

14  wages and benefits.

15  As a result of the above, COMPLAINTANT is entitled to past and future lost wages,
    bonuses, commissions, benefits and loss or diminution of earning capacity.

16  COMPLAINTANT claims general damages for emotional and mental distress and
    aggravation in a sum in excess of the jurisdictional minimum of this Court.

17  Because the acts taken toward COMPLAINTANT were carried out by officers, directors
    and/or managing agents acting in a deliberate, cold, callous, cruel and intentional manner, in

18  conscious disregard of COMPLAINTANT's rights and in order to injure and damage
    COMPLAINTANT, COMPLAINTANT requests that punitive damages be levied against

19  RESPONDANTS and each of them, in sums in excess of the jurisdictional minimum of this
    Court.

20

21

22

23

24

25

26                                          -6-
27
    Date Filed: February 8, 2024
28
                                                        CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8

Page 127

VERIFICATION

I, **KAMRAN SHAHABI**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On February 8, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**ONTARIO, CA**

-7-
*Complaint – CRD No. 202402-23560008*

Date Filed: February 8, 2024

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT 8
Page 128

# EXHIBIT B

EXHIBIT 8
Page 129

**Salon Associates** include Professional Pet Stylist, Stylist In Training, Grooming Trainee, and Professional Bather. Grooming Trainee and the Stylist In Training are temporary positions for the Pet Stylist development program to become a Professional PetStylist.

| Job Title | Job Code | Grade | Pay Type |
|---|---|---|---|
| Professional PetStylist | 2048 | 3 | Variable Hourly |
| Stylist In Training | 2040 | 2 | Variable Hourly |
| Grooming Trainee | 2016 | 1 | Hourly |
| Stylist Apprentice | 2053 | 1 | Hourly |
| Professional Bather | 2022 | 1 | Hourly |

**Pay Type Explanations**

**Hourly Associates** are paid their hourly rate for all hours worked.  For a detailed description of hourly pay, refer to PaySmart or your Store Band.

**Variable Hourly Associates** will be paid the **greater of their base hourly rate or a variable hourly rate based on a 4 week average that is calculated 2 weeks in arrears** (hourly rate times hours worked). The four week average rate is calculated by dividing all hours worked in the four week period, excluding paid time off, time spent in training and meetings, into the total sales credits generated, for the same four week period, based on the sales price of the services the associate performs. This includes bath and quick services where a bather was not available thus requiring a stylist to perform them. The data source for the weekly sales credits is the SMS report.

*Refunds pertaining to poor quality of work will only be removed from calculations if approved by the Store Leader.

| Job Title | Sales Credit Level |
|---|---|
| Professional PetStylist | 50% of sales price for services performed |
| Stylist In Training | 40% of sales price for services performed |

I have received and read the California Incentive Pay Explanation document.

Associate Printed Name     Aug 19, 2022   Date

Kristian Annette Bunch
_____

Associate Signature   Kristian Annette Bunch

Employer Printed Name      Date   Aug 19, 2022

Nicholas Garza
_____

Employer Signature   Nicholas Garza

EXHIBIT 8
Page 130